111 33
114 46

111 33
116 111

111 33
141 2597

## BOARD OF SUPERVISORS OF WAYNE COUNTY *v.* WAYNE CIRCUIT JUDGE.

1. BOARDS OF SUPERVISORS—CONSTITUTIONAL POWERS—STATUTORY LIMITATIONS.

The legislature may, under the Constitution, confer upon boards of supervisors such powers, and surround them with such limitations, as are not inconsistent with the powers conferred and the limitations placed by the Constitution itself.

2. SAME—ERECTION OF COUNTY BUILDINGS—EXPENDITURES—REQUIREMENT OF TWO-THIRDS VOTE.

Under 1 How. Stat. § 483, subd. 6, and section 484, authorizing the board of supervisors to cause the erection of county buildings, and to prescribe the time and manner thereof, but prohibiting the exercise of such powers without a vote of two-thirds of all the members elect, a two-thirds vote is necessary to authorize the letting of the several contracts for work involved in the construction of a building.

3. SAME—CONSTITUTIONAL LAW.

The statutes cited, in thus regulating the expenditure of money raised under authority of a vote of the electors, do not constitute an undue restriction upon the power conferred upon the board by the Constitution, article 10, § 9, to borrow or raise by tax $1,000 for constructing public buildings, but no greater sum unless authorized by a majority of the electors of the county, in view of article 10, § 6, providing that the board shall have such powers as shall be prescribed by law.

4. SAME—REPEAL OF STATUTE.

These sections of the statute were not repealed, either expressly or by implication, by Act No. 295, Local Acts 1895, which provides, *inter alia*, for a special meeting of the board of supervisors of Wayne county to determine the necessity for the construction of county buildings, and which contemplates action upon a majority vote.

*Mandamus* by the board of supervisors of Wayne county to compel Joseph W. Donovan, circuit judge of said county, to dissolve an injunction restraining the

execution of a contract for the performance of part of the work involved in the construction of a county building. Submitted November 17, 1896.   Denied December 1, 1896.

*John J. Speed* and *John D. Conely*, for relator.

*Edwin F. Conely* and *Gray & Gray*, for respondent.

MOORE, J.   This is a proceeding brought to test the effect of a resolution adopted by a majority vote of the supervisors to accept the bid of Henry George & Son to construct the stonework of the new county building about to be erected in Wayne county.   This building is to cost a large amount of money.   It is agreed by counsel representing all parties in interest that the only question necessary to be determined in this proceeding is whether a two-thirds vote of all the supervisors elected is necessary to authorize the letting of contracts for the construction of the building.   The learned counsel have prepared very exhaustive briefs, containing all the legislative and constitutional provisions which have been adopted from the earliest history of the State in relation to the powers conferred upon the board of supervisors.   These briefs have been of great value in examining the questions at issue, but we do not deem it necessary, in this discussion, to go over all the ground covered by the briefs.

Section 9 of article 10 of the Constitution provides that—

"The board of supervisors of any county may borrow or raise by tax one thousand dollars for constructing or repairing public buildings, highways, or bridges; but no greater sum shall be borrowed or raised by tax for such purpose in any one year, unless authorized by a majority of the electors of such county voting thereon."

The question of raising money for the erection of the county building was voted upon by the people, and was authorized by them.   It is urged by the counsel for the petitioner that the power conferred upon the board of supervisors by this section is exclusive, and that the

legislature cannot place any limitation upon the power so conferred, and that, having been authorized by the electors to raise this money, the board can expend it in the erection of buildings, free from any limitations placed upon them by the legislature. Before accepting this view, I think we must consider this section in connection with the other constitutional provisions, and give them all such a construction, if possible, as will make them all operative. Section 6 of article 10 provides that—

" A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law."

These two sections are to be construed together, and it was evidently contemplated that the legislature might confer upon the board of supervisors such powers, and surround them with such limitations, as were not inconsistent with the powers and limitations placed by the Constitution itself. Section 9 authorizes the board to raise money for certain purposes, but is entirely silent as to the method of its expenditure. Can it be doubted that section 6 was intended to authorize the legislature to place such safeguards around the expenditure of public funds by boards of supervisors as the public interest requires?

Section 475, 1 How. Stat., provides that a majority of the supervisors of any county shall constitute a quorum for the transaction of the ordinary business of the county. Subdivision 6, § 483, 1 How. Stat., authorizes the board of supervisors "to cause to be erected the necessary buildings for poor-houses, jails, clerks' offices, and other county buildings, and to prescribe the time and manner of erecting the same." Section 484 provides, "None of the powers mentioned in the sixth subdivision of the last preceding section shall be exercised without a vote of two-thirds of all the members elected to such board." What effect is to be given to these provisions?

The unlimited power to raise and expend large sums of public money appeals to the cupidity of the weak and

dishonest. Its tendency is to encourage the extravagant use of public funds. It was in recognition of this fact, and to prevent raising unnecessary sums of money, that section 9 of article 10 was placed in the Constitution. There is no provision of law requiring boards of supervisors to let contracts for the construction of county buildings to the lowest bidder. Was it not the legislative intent to guard the public interests by requiring that the action of the board of supervisors in spending the funds, when raised for the construction of public buildings, must command the approval of two-thirds of the members elect? It is urged that Act No. 295 of the Local Acts of 1895 makes an exception of Wayne county, and authorizes the construction of county buildings by a majority vote of the supervisors. A careful reading of this act discloses that its purpose was to enable a special meeting of the board of supervisors to be held to determine the necessity for the construction of the county buildings, and to provide a method of submitting to the electors of Wayne county the question of raising by loan the money required in the construction of the buildings. The legislature did not indicate, by any language used in the act, a purpose to remove the limitations upon the powers of the board of supervisors in relation to the construction of county buildings contained in the Constitution and the general laws. The act does not repeal, either expressly or by implication, subdivision 6 of section 483, or section 484, 1 How. Stat. Whatever power boards of supervisors have to construct county buildings, and to make contracts therefor, is derived from subdivision 6 of section 483, and section 484, 1 How. Stat. It becomes important, then, to determine what is the obvious and natural meaning of the words used in conferring this authority upon the board. Can it properly cause to be erected a county building at a cost of nearly a million of dollars, so as to guard the interests of the public, and prescribe the time and manner of its erection, where the construction is to be done by con-

tract, without knowing who the contractors are, when they are to commence their contract, and when to finish it? How much they are to be paid, and when? The kinds and qualities of the materials to be employed in the construction? Must not the board be put in possession of a knowledge of all the essential things to be contained in the contracts necessary · to enable them to pass upon the contracts intelligently? And must not these contracts secure the approval of two-thirds of all the members elect, if the provisions of the statute are to be given effect? There is but one answer to these inquiries, and that is an affirmative one.

The petition for the writ of *mandamus* is denied, with costs.

The other Justices concurred.