THOMAS *v.* KENT CIRCUIT JUDGE.

1. MANDAMUS—DISSOLUTION OF INJUNCTION—QUESTION OF LAW.
   *Mandamus* to compel the dissolution of an injunction is a proper remedy where the dispute is one of law merely.

2. BOARDS OF SUPERVISORS—PUBLIC BUILDINGS—BORROWING MONEY —SUBMISSION TO ELECTORS.
   The board of supervisors of a county may, by a mere majority vote of the members elect, adopt a resolution to submit to the electors of the county a proposition to borrow money for the purchase of a site for a county asylum for pauper insane, and the erection of suitable buildings thereon, under 1 How. Stat. §§ 475, 483 (subd. 7), empowering a majority of the board to borrow or raise by tax any sums necessary for any of the purposes mentioned in the act, provided that no greater sum than $1,000 shall be borrowed or raised in any one year for the purpose of repairing or constructing public buildings, unless authorized by a majority of the electors of the county voting therefor, although by section 484 a two-thirds vote is required before the board can exercise the power conferred by section 483, subd. 6, to "cause" such buildings "to be erected."

3. SAME—DETERMINATION AS TO NECESSITY AND COST.
   The adoption of a resolution which recites that such asylum, if erected, would within a few years be a self-sustaining institution and a saving to the county, and which fixes the amount of the proposed loan, is a sufficient determination by the board of the necessity for the building and of the sum necessary to be raised, within 1 How. Stat. § 492.

4. SAME—FORM OF BALLOTS—STATUTES — DIRECTORY PROVISIONS.
   The resolution of submission provided that the ballots should be in the following form: "Shall the board of supervisors * * * borrow * * * the sum of $50,000, and spread upon the various assessment rolls, * * * for the repayment of said money, $10,000 in the year 1898 * * * [providing for five annual payments], for the purpose of purchasing a suitable site, and the erection of suitable buildings thereon, for a county pauper insane asylum?" followed by the word "Yes," and a duplicate thereof, by the word "No." *Held*, a sufficient compliance with 1 How. Stat. § 492, pro-

viding that such ballots shall have thereon the words, "For the Loan," and "Against the Loan," which is to be construed as a directory provision.

5. SAME.

The fact that the proposition, as submitted to the electors, embodied method and time of payment, did not render it objectionable.

*Mandamus* by William J. Thomas, clerk of the board of supervisors of Kent county, to compel Allen C. Adsit, circuit judge of said county, to dissolve an injunction restraining the submission to the electors of the question of borrowing money and levying a tax to erect a county pauper insane asylum. Submitted March 1, 1898. Writ granted March 8, 1898.

*Stuart & Barker*, for relator.

*Rodgers, McDonald & Corwin*, for respondent.

HOOKER, J. At its January, 1898, session, the board of supervisors of the county of Kent adopted the following resolution, upon aye and nay vote:

" *Whereas*, Kent county has been highly favored, through the untiring efforts of the senators and representatives of said county in the State legislature, in securing the necessary legislation to enable said county to erect and maintain a county pauper insane asylum to care for the indigent insane of said county; and

" *Whereas*, several thousand dollars is annually paid by said county to the State asylum at Kalamazoo for the care of the indigent insane of said Kent county, as the statistics for the last five years, ending December 1, 1896, show the amount so paid to be $46,575.80, with 44 inmates on September 15, 1897; said asylum also receiving from the State, for county charges who have remained therein for two years or more, for the fiscal year ending June 30, 1896, the sum of $22,498.36, as the statistics show, such asylum having as State charges from Kent county on said June 30, 1896, 128 patients, and on September 15, 1897, 154 patients; taking said sum as a basis, the amount paid by the State for the past five years for the care of the indigent insane of Kent county would amount to the sum of $112,-491.80; and

"*Whereas*, in a few years such an asylum would be a self-sustaining institution, and a saving to Kent county: Therefore be it

"*Resolved*, by the board of supervisors of the county of Kent, that there be submitted to the qualified electors of said county, at the annual spring election to be held on the first Monday in April, A. D. 1898, the proposition to borrow, on the faith and credit of said county, and to issue its evidence of indebtedness therefor, the sum of $50,000, the proceeds to be used solely for the purpose of purchasing a suitable site for and the erection of a suitable building or buildings thereon for a county pauper insane asylum in said county of Kent; said money so borrowed to be paid in five equal annual installments, of $10,000 each, the first installment thereof to be paid in the year 1898. Said sum so borrowed to be repaid by spreading the same upon the taxable property of Kent county, as follows: $10,000 in the year 1898, $10,000 in the year 1899, $10,000 in the year 1900, $10,000 in the year 1901, and $10,000 in the year 1902. And be it further

"*Resolved*, that the county clerk be, and he is hereby, instructed to cause notices of said proposition to be posted in three conspicuous places in each of the several townships and wards in said county of Kent, at least 30 days prior to the first Monday in April, A. D. 1898; and that said county clerk cause such notice to be published in two of the newspapers printed and circulating in the said county of Kent for at least three successive weeks prior to the time of holding said election. And be it further

"*Resolved*, that the form of the ballots shall be as follows: 'Shall the board of supervisors of the county of Kent, State of Michigan, borrow, on the faith and credit of said county, the sum of $50,000, and spread upon the various assessment rolls of the townships and wards of said county, for the repayment of said money, $10,000 in the year 1898, $10,000 in the year 1899, $10,000 in the year 1900, $10,000 in the year 1901, and $10,000 in the year 1902, for the purpose of purchasing a suitable site for and the erection of a suitable building or buildings thereon for a county pauper insane asylum in said county of Kent? Yes.' 'Shall the board of supervisors of the county of Kent, State of Michigan, borrow, on the faith and credit of said county, the sum of $50,000, and spread upon the various assessment rolls of the townships and wards of said county, for the repayment of said money,

$10,000 in the year 1898, $10,000 in the year 1899, $10,-000 in the year 1900, $10,000 in the year 1901, and $10,000 in the year 1902, for the purpose of purchasing a suitable site for and the erection of a suitable building or buildings thereon for a county pauper insane asylum in said county of Kent? No.' And be it further

"*Resolved*, that the county clerk of said county be, and he is hereby, directed to take the necessary steps to cause said proposition to be placed on proper ballots, to be distributed in the same manner and by the same persons distributing the regular ballots for said spring election to be held on said first Monday in April, A. D. 1898."

It received 27 votes; 18 supervisors voted against it, and three were absent. Subsequently certain taxpayers filed a bill, and obtained an injunction restraining the submission of the question to the electors of the county. Upon the denial of a motion to dissolve said injunction, this application was made for a *mandamus* to require such action.

That this is a proper remedy where the dispute is one of law merely, see *Van Norman* v. *Jackson Circuit Judge*, 45 Mich. 204, McGrath, Mand. Cas. No. 827; *Ionia, etc., Ins. Co.* v. *Ionia Circuit Judge*, 100 Mich. 606, McGrath, Mand. Cas. No. 810.

The meritorious question is whether a sufficient number of the supervisors voted for the resolution, counsel for the respondent urging that the assent of two-thirds of the supervisors elect was essential to the submission of the question.

Section 475, 1 How. Stat., provides:

" A majority of the supervisors of any county shall constitute a quorum for the transaction of the ordinary business of the county, and all questions which shall arise at their meetings shall be determined by the votes of a majority of the supervisors present, except upon the final passage or adoption of any measure or resolution, in which case a majority of all the members elect shall be necessary."

Section 483 prescribes the powers of boards of supervisors, and contains 17 subdivisions. We quote a few of them:

"*Fifth.* To remove or designate a new site for any county buildings required to be at the county seats, when such removal shall not exceed the limits of the village or city at which the county seat is situated, as previously located.

"*Sixth.* To cause to be erected the necessary buildings for poor-houses, jails, clerks' offices, and other county buildings, and to prescribe the time and manner of erecting the same.

"*Seventh.* To borrow or raise by tax upon such county any sums of money necessary for any of the purposes mentioned in this act: *Provided,* that no greater sum than one thousand dollars shall be borrowed or raised by tax in any one year, for the purpose of constructing or repairing public buildings, highways, or bridges, unless authorized by a majority of the electors of such county voting therefor as hereinafter provided.

"*Eighth.* To provide for the payment of any loan made by them, by tax upon such county, which shall in all cases be within fifteen years from the date of such loan."

Were there no further provisions, the board might do any of these things by a vote of the majority of the members elect; but section 484 provides that—

"None of the powers mentioned in the third, fifth, sixth, eleventh, twelfth, thirteenth, fifteenth, and sixteenth subdivisions of the last preceding section shall be exercised without a vote of two-thirds of all the members elected to such board."

And section 492 designates the mode of submitting propositions to loan or tax to the electors. It provides:

" Whenever it shall become necessary, under the provisions of this act, to submit to a vote of the electors of any county the question of raising any sum of money by loan or by tax, the said board, after having determined the sum necessary to be raised, whether the same shall be made by loan or by tax, shall proceed to give the notice of such determination, and of the time when the question will be submitted to the electors of such county in the several townships; which notice shall be for the same length of time, and posted in the same manner, as required by the eighteenth section of this act; and the votes shall be taken,

canvassed, certified, and returned in the same manner as required by the nineteenth section of this act, except that those voting for such tax or loan shall have written or printed on their ballots the words, ' For the Tax,' or ' For the Loan,' as the case may be, and those voting against the tax or loan shall have written or printed on their ballots the words, ' Against the Tax,' or ' Against the Loan,' as the case may be."

Subdivision 7 of section 483 is the one under which the borrowing or raising by tax is to be done.   To the extent of $1,000 per year, it may be done without authority from the electors.   It can hardly be contended that the determination to spread a tax or borrow $1,000 requires the assent of two-thirds of the board, and the only limitation on the authority to raise more is found in that subdivision. Obviously, after the favorable vote is cast, a majority of the board may order the tax or negotiate the loan.   There is nothing in this subdivision that forbids the submission of the proposition to the electors by a majority vote.   But a majority merely cannot "cause county buildings to be erected."   See section 483, subd. 6, and section 484, and *Board of Sup'rs of Wayne Co.* v. *Wayne Circuit Judge,* 111 Mich. 33.   If we are to say that the submission of the question to the electors can be called a "causing to be erected," the respondent's contention is correct.   In that case it would follow that a two-thirds vote would be necessary, not only where it is proposed to submit a proposition to the electors, but where the board itself proposes to raise $1,000 *for the purpose of erecting buildings,* though, if it were to be used for repairs, it is not clear that such vote would be required.   The construction contended for is a technical one, and we doubt if it was contemplated by the legislature.   Abstractly, we see no good reason for requiring a two-thirds vote by the supervisors before allowing the electors to determine the question, and we are of the opinion that a vote of the majority of the supervisors elect is sufficient.

Some other questions are raised; *e. g.,* it is said that the board never determined that such a building was neces-

sary, and that they did not determine the amount necessary to be raised. This is a requirement which counsel ascribe to 1 How. Stat. § 492, already quoted. We are of the opinion that the resolution submitted is tantamount to a formal determination of the necessity for the building, if such determination is required, and that the resolution, and its adoption by the people, are all the determination of amount that is necessary. Had the vote been upon a resolution which did not fix the amount to be raised, such determination by the board would be necessary. We think the proposition was to raise by loan, notwithstanding it also provided, and the people voted upon, the method and time of payment; and we are also of the opinion that the form of the ballot is not objectionable. It is not literally in accord with the prescribed form, but gives the voter information as to the nature of the proposition, which the prescribed form would not do. The statute should be considered directory. See Paine, Elect. § 528, and cases cited.

We are of the opinion that the injunction should have been dissolved, and the respondent should be so advised.

The other Justices concurred.