State ex rel. Edwards v. Millar, Mayor, et al.

STATE ex rel. EDWARDS ·V. MILLAR, Mayor, el al.

No. 120.    Opinion Filed June 23, 1908.

(96 Pac. 747.)

1.  **ELECTIONS — Ballots — Harmless Irregularities — Statutory Provisions.** The purpose of that part of section 2963, Wilson's Rev. & Ann. St. 1903, which provides that the election officers, whenever a question is to be voted on by the electors of a city or town, shall cause a brief statement of the same to be printed on the ballot and the words "Yes" and "No" under the same, is to prevent the use of any other than official ballots, and not to condemn as invalid official ballots which have been furnished to the electors by election officers charged with that duty for some oversight or error on their part.

2.  **SAME** An election held for the purpose of submitting to the qualified electors of a municipality the question of incurring indebtedness for the purpose of constructing public utilities is not invalid for the reason alone that the election officers who prepared the ballots had printed thereon to the left of the question to be voted on and under the squares the words "Yes" and "No," instead of placing the squares under the questions with the words "Yes" and "No" to the left of them as provided by section 2963, Wilson's Rev. & Ann. St. 1903.

3.  **SAME—Statement of Question Submitted—Constitutional Provisions.** The term "for the construction of waterworks in said city, to be owned and operated by said city," printed on the ballots used at an election held for the purpose of submitting to the qualified electors of a municipality the question of incurring indebtedness for the construction of public utilities under section 27, art. 10, of the Constitution, is sufficiently comprehensive to include such work as re-equipping and making extensions to an existing waterworks system.

4.  **CONSTITUTIONAL LAW—Construction of Constitution—Defeat of Object.** The construction of. a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption.

5.  **MUNICIPAL CORPORATIONS — Public Improvements—Provisions for Payment—Ordinances—Sufficiency.** City ordinances providing that a continuing annual tax sufficient to pay the interest when the same shall fall due, and for the purpose of providing a sinking fund with which to pay the principal

of said bonds, shall be levied upon all the taxable property within said city, substantially comply with the requirements of section 27, art. 10, of the Constitution, in respect to providing funds for paying the interest and principal on bonds issued for the purpose of constructing public utilities.

6. **CONSTITUTIONAL LAW—Self-Executing Provisions of Constitution—Construction of Public Utilities.** Section 27, art. 10, of the Constitution, is a self-executing grant of power to the qualified property tax-paying voters of a city or town voting at an election held for that purpose, by a majority vote, to become indebted in a larger amount than that specified in section 26, art. 10, of the Constitution, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city.

7. **MUNICIPAL CORPORATIONS — "Public Utilities" — Sewers.** Sewers are "public utilities" within the meaning of the term as used in section 27, art. 10, of the Constitution.

8. **SAME—Bonds—Time to Run.** That part of section 27, art 10, of the Constitution, which provides that a sinking fund shall be created sufficient to pay the principal, in 25 years, of bonds issued to purchase, construct, or repair public utilities, clearly contemplates that such bonds shall run for a period of 25 years.

(Syllabus by the Court.)

Original proceeding by the state of Oklahoma, on relation of Robert J. Edwards, for a writ of mandamus directed to John E. Millar, as mayor, and A. R. Clement, as city clerk, of Norman, requiring execution and delivery of city bonds. Writ issued.

*Shartel, Keaton & Wells,* for petitioner.
*Ben F. Williams* and *C. M. Keiger,* for defendants.

KANE, J. This is an original proceeding wherein the petitioner prays that a writ of mandamus issue out of this court directed to the defendants, John E. Millar, as mayor, and A. R. Clement, as city clerk, of the city of Norman, a city of the first class, commanding them to execute a certain issue of waterworks and sewer bonds and the interest coupons thereto attached, in accordance with certain ordinances of said city, and to affix to said bonds the corporate seal of said city and to deliver the same to the pe-

tioner, Robert J. Edwards, upon payment by him of the purchase price thereof.

The petition states, in substance, that Norman is a city of the first class; that the defendants are the duly elected mayor and clerk thereof; that on December 24, 1907, a resolution was adopted by the council of said city declaring it necessary that the city have funds to the amount of $45,000 for the construction of waterworks and $35,000 for the construction of sewers, and directing the mayor to call a special election for the purpose of voting on the question of issuing such bonds; that notices of such election were duly published, and such election was held on the 11th day of February, 1908, and the returns thereof duly canvassed by the council, 343 ballots being for the issuance of waterworks bonds and 12 against, and 327 being for sewer bonds and 24 against; that on February 14, 1908, the council, after having by resolution declared such proposition carried, passed ordinances Nos. 77 and 78, which provided for the execution and issuance of said bonds, prescribed the forms therefor, and provided for the levy of an annual tax sufficient to produce in each year the amount needed for interest, and to create a sinking fund to pay the principal of such bonds in 25 years; that such bonds were duly sold to the petitioner, who has furnished proper blanks and requested the mayor and clerk to execute the same, which they have refused to do.

Upon filing this petition an alternative writ of mandamus was issued, and the return thereto filed by the defendants raises certain legal questions that may be epitomized as follows: (1) Do certain variations from the form prescribed by law made by the election officers in the ballot used invalidate the election? (2) It is contended that the ballot used at the election stated the purpose of the issuance of the bonds to be "for the construction of waterworks in said city, to be owned and operated by said city," whereas, in fact, it was and is proposed to issue bonds for the purpose of re-equipping and making extensions of the city's existing waterworks system; the question thus arising whether the expression "the construction of waterworks" was broad enough to in-

clude remodeling, enlarging and re-equipping the old waterworks plant. (3) Was the provision made for the payment of interest and the creation of a sinking fund in compliance with the requirements of law? (4) Is section 27, art. 10, of the Constitution of the state of Oklahoma, a self-executing grant of power to municipalities or a limitation on the power of the Legislature? (5) Are sewers public utilities within the meaning of section 27, art. 10, of the Constitution? (6) Who are legal voters at elections called for the purpose of determining whether bonds shall issue for the erection of public utilities? (7) May bonds for the purpose of purchasing or constructing public utilities or re-equipping the same, to be owned exclusively by the city, be issued payable in 25 years? (8) Has a city authority to issue waterworks bonds before the contract providing for the contemplated waterworks improvement has been submitted to a popular vote and ratified by a majority of the voters of said city voting at a general or special election held therefor?

The foregoing questions will be noticed in the order above stated.

First. The variation in the form of ballot used consisted in this: Section 4, art. 1. c. 17, p. 233, Sess. Laws 1905, reads, in part, as follows:

"The voter shall then and without leaving the room go into any booth which may be unoccupied and indicate the candidates for whom he desires to vote by stamping a cross in the square immediately to the left of their names, and indicate his preference on any question or constitutional amendment or other special matters by stamping in the square immediately to the left of and preceding the words 'Yes' or 'No' under such question."

Section 2963, Wilson's Rev. & Ann. St. 1903, reads as follows:

"Whenever a Constitution, constitutional amendment, or other question is required by law to be submitted to the popular vote, if all the electors of the territory are entitled to vote on such question, the Territorial Board of Election Commissioners shall cause a brief statement of the same to be printed on the territorial

ballot and the words 'Yes' and 'No' under the same so that the elector may indicate his preference by stamping at the place designated in front of either word. If the question is required by law to be voted on by the electors of any district or division of the territory, the board or boards of election commissioners of the county or counties, including or included in such division or district, shall cause similar provisions to be made on the local ballot. In case any elector shall not indicate his preference by stamping in front of either word, the ballot as to such question shall be void and not be counted."

On the ballots prepared for this election, the election officers placed the squares to the left of the questions to be voted on, and placed under the squares the words "Yes" and "No," instead of placing the squares under the propositions to be voted on and placing the words "Yes" and "No" at the left of the squares, as required by section 2963, Wilson's Rev. & Ann. St. 1903.

The instructions for voting printed on ballots read as follows:

"Those wishing to vote for the issuance of the bonds shall designate it by marking 'X' in the square above the word 'Yes,' and those wishing to vote against the issuance of the bonds shall designate it by marking 'X' in the square above the word 'No.'"

The defendants contend that the election is invalidated by this variation in the form of the ballot made by the election officers. The authorities do not seem to support this contention. In the case of *People v. Board of Canvassers* (Sup.) 94 N. Y. Supp. 996, it was contended that all the ballots cast at an election to remove a courthouse site were void because not in the form required by law. The objection was that certain directions with regard to voting were printed on the ballots in addition to those required by statute. The statute provided that "none but ballots provided in accordance with the provisions of the election law should be counted." The court held that the purpose of that provision is to prevent the use of any other than official ballots and not to condemn as invalid official ballots which have been furnished to the electors by election officers charged with that duty for some

oversight or error on their part. The court further held that even though they were inadvertently or wrongly used, the ballots would not for these reasons be void, and quotes the following from the opinion of Mr. Chief Judge Andrews in *Hirsh v. Wood,* 148 N. Y. 143, 42 N. E. 537:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

In *State ex rel. Brooks v. Fransham,* 19 Mont. 273, 48 Pac. 1, it is held that, where electors vote the official ballots supplied to them by the judges of election, their legally expressed will cannot be overthrown where they are not at fault by the fact that the public officers who prepared the ballots in some way neglected his or their duty.

The case of *Thomas v. Kent Circuit Judge,* 116 Mich. 106, 74 N. W. 381, was one of mandamus to compel the circuit judge to dissolve an injunction restraining the submission to electors of the question of borrowing money to erect a pauper insane asylum. It was admitted that the ballots prepared were not literally in accord with the form prescribed by statute, but the court says that they gave the voter information as to the nature of the proposition which the prescribed form would not do, and held the statute directory only.

*Merrill v. Reed,* 75 Conn. 12, 52 Atl. 409, was a petition for a recount of ballots cast at an election. The statute provided that the Secretary of State should designate the size and style of type to be used. The designation was made and the ballots printed in compliance with such instructions, except that the type was slightly different. It was held that such ballots should be counted.

In *Kulp v. Railey* (Tex. Sup.) 89 S. W. 957, a name was im-

properly placed upon the official ballot, and it was held that inasmuch as the election had been conducted in good faith the ballots should be counted.

In *Peabody v. Burch et al.,* 75 Kan. 543, 89 Pac. 1016, it is held that although mandatory provisions of the statute are disobeyed in the preparation of the official ballot, the will of the voters expressed by means thereof cannot on that account be disregarded.

The Supreme Court of Oklahoma has also passed upon the question adversely to the contention of the defendants. In the case of *McClelland v. Erwin,* 16 Okla. 612, 86 Pac. 283, Mr. Justice Irwin speaking for the court, says:

"The provision of section 41 of chapter 33, Wilson's Rev. & Ann. St. 1903, known as 'Election Law,' which provides that the voter shall indicate his choice by stamping a cross in a square on the ballot immediately preceding the name of the candidate of his choice, as to the stamping is directory only, and ballots, if in other respects regular, will, in the absence of fraud, be counted, although marked with a pencil."

In the case at bar there is no allegation in the petition, nor is it contended by counsel in their brief, that there was the least semblance of fraud in the election, or that the exact will of the people of the city of Norman was not honestly and fairly expressed by the vote cast. This being true, we believe it to be contrary to reason as well as to the great weight of authority to invalidate the election on the ground urged by the defendants' first contention.

Second. The point is made by the defendants' return to the alternative writ that the ballots used at said election stated the purpose of issuing the bonds to be "for the construction of waterworks in said city, to be owned and operated by said city," whereas, in fact, it was and is proposed to issue bonds for the purpose of re-equipping and making extensions of the city's existing waterworks system. The question raised by this allegation is, does the expression "the construction of waterworks," as it appears printed

upon the ballots, appear broad enough to include remodeling and enlarging and re-equipping the old waterworks plant, or does construction end whenever a waterworks system has been installed?

In *Grant v. Hartford & New Haven R. R. Co.,* 93 U. S. 225, 23 L. Ed 878, the expression "profits used in construction" of a railroad was held to include all money expended in permanent betterments. Mr. Justice Bradley, in the opinion, says:

"If a railroad company should make a second track when they had but a single track before, this would be a betterment or permanent improvement, and, if paid out of the earnings, would be fairly characterized as 'profits used in construction.'"

In *Town of Pelham v. Woolsey* (D. C.) 16 Fed. 418, it was held that, when the title of an act was "to authorize the town to raise money to construct a town dock," this was sufficient to authorize them to maintain the same and collect wharfage. In the body of the opinion the court says:

"But it is contended that the whole subject is not expressed in the title of the act, and that the only purpose of the act indicated by its title is to 'raise money for the purpose of *constructing* a town dock,' not for maintaining it afterwards, nor to provide means for its subsequent maintenance, nor to charge dockage.

"In the present case, it may be said, it is true that, strictly, the maintenance of this dock, or the power 'to keep and maintain the same in good repair at the expense of the town,' is not identically the same as 'constructing the dock' spoken of in the title. No one, however, could imagine that the dock was to be abandoned by the town the moment its original construction was completed. Subsequent repair is necessary in the nature of the case; and authority to construct the dock would, therefore, in a general sense, seem to imply and include the power to keep it constructed by means of necessary repairs."

*In the Matter of the Application of Fowler,* 53 N. Y. 60, the authority was given to construct a sewer, and in discussing this, the court says:

"Nor do we think that the phrases 'to construct' and 'be constructed' are, in the purview of this act, to be confined to the bare act of building a sewer. Doubtless, to construct is primarily to

form, to build together; and a power to construct may in many cases end when the work of building is done. But here the power to construct is the power to keep together as well as the power to put together; the power to maintain, protect, and preserve as well as the power to erect. The purpose or object of sewerage upon a general plan for a city is not temporary, and such a plan is for a long-continued use and benefit. The works constructed for it must be afterward maintained, else the purpose fails. And for this it is as needful that the municipality have the lawful use of the streets where the sewers are laid, as it is for the purpose of laying them, so that the authority given to the board to apply for the opening of this street was not gone upon the completion of the sewer."

*State v. Allen,* 183 Mo. 283, 82 S. W. 103, was an action of mandamus to require the State Auditor to register bonds issued by the city of Columbia. The Constitution of Missouri authorizes a city to become indebted "for the purpose of purchasing or constructing waterworks and electric and other light plants to be owned exclusively by the city." The power here is limited to purchasing or constructing. The proposition was raised that the Constitution did not authorize the issuance of bonds for the purpose of purchasing waterworks and for improving the same, but that cities were restricted to one of two alternatives, and they must submit to the voters either a proposition to incur an indebtedness to build and construct a new system, or the proposition simply to buy an existing system. Mr. Justice Gantt, in discussing the question raised by this contention, says:

"Here the proposition is one only; i. e., to buy the old waterworks and electric plant and improve them. While it is true that municipal corporations have only such powers as are either expressly granted to them, or such as are necessarily implied, and that grants of power are strictly construed so as not to extend beyond the purpose of the Legislature, yet, as said by this court in *Bank v. How,* 56 Mo., loc. cit. 59, 'The construction must not be so strict or technical as to defeat the evident objects and purposes of their creations.' We think the amendment to the Constitution was designed by the people to enable cities of the population named to provide themselves with water and light, and to

encourage municipal ownership of the water supply and lighting facilities. Their power to incur indebtedness for such purposes was found by experience under the restriction of our Constitution; and it was within the observation of the Legislature that, some cities having no plant at all, or a very inferior one, the city might desire to issue its bonds and build an entirely new plant. If so, this amendment furnished them the means. On the other hand, there might be, as in this case, a plant already established with its mains laid and connections established, and the city, to avoid tearing up its highways and to avoid competition, might desire to buy the old or existing plant, and yet, within the limits of its power to raise money, might desire to extend and improve that plant; and when, as in this case, the proposition is plainly put before the voters to buy the old plant and make it available for all purposes, we think it falls clearly within the meaning and spirit of the amendment of section 12a of article 10 of the Constitution, and it is not at all necessary to first purchase and then have a second election to improve it, but it can all be submitted at one time, and it is one proposition after all."

We believe the words "the construction of waterworks in said city" printed on the ballots are sufficiently comprehensive to include such work as re-equipping, and making extensions to, the city's existing waterworks system. Such a construction is certainly within the reasoning of the Supreme Court of the United States in *Grant v. Hartford & New Haven R. R. Co.* and the other cases cited, *supra*. In this case we have an insufficient waterworks plant; the city wishes to re-equip and extend it. It seems to us that the term "construction of waterworks" includes within its meaning work of the above class, and that the people would be sufficiently informed, by its being printed on the ballot, of the character of work to be performed and the nature of the indebtedness they were voting to incur.

Third. By the eighth paragraph of defendants' return to the alternative writ they admit that the mayor and councilmen of the city of Norman passed two ordinances purporting to provide for the collection of an annual tax in addition to the other taxes provided for by the Constitution, sufficient to pay the interest on the

indebtedness incurred by the bond issue as it falls due, and also to constitute a sinking fund for the payment of the principal thereon within 25 years from the time of contracting the indebtedness, but allege that the tax levy provisions in said ordinances are not in compliance with the requirements of section 26 and 27 of article 10 of the Constitution, in this:

"(1)   That they do not make adequate provision for the payment, by tax levy or otherwise, of the interest falling due on said bonds in the year 1908; for the reason that the tax in said supposed ordinances provided for the year 1908 will not and cannot, under the law, be collected in that year in time to meet the interest on said bonds falling due on September 1st of that year. (2)   That they do not adequately provide for the collection of an annual tax to pay the interest on and principal of said bonds within the true intent, object, and purpose of said Constitution, but in legal effect amount merely to an ineffectual and futile promise on the part of the present legislative body of said city of Norman that the future legislative bodies of said city for the time being, during said period from 1908 to 1932, inclusive, will make provisions for the levy and collection of such taxes."

Section 27 of the Constitution, *supra*, the section under which this indebtedness must be incurred, provides:

"That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

The ordinance passed by the city for the purpose of paying the interest and to create a sinking fund provides that for the purpose of paying the interest on said bonds there shall be, and there is hereby, levied a continuing annual tax upon the taxable property within the city of Norman sufficient to produce a sum sufficeint to pay the interest and for the purpose of pro-

viding a sinking fund with which to pay the principal on said bonds there shall be, and there is hereby, levied a continuing annual tax upon all the taxable property in said city sufficient to produce a sum sufficient to pay said bonds at maturity, provision to meet the requirements hereof to be, in due time and manner, annually hereafter made. To take the view of this proposition advanced by the defendants would strike down section 27, art. 10, of the Constitution, and defeat the evident object and purpose of its adoption. The evident object and purpose of section 27, *supra*, is primarily to empower the incorporated cities and towns of this state by a majority of the qualified taxpaying voters voting at an election held for such purpose to become indebted in a larger amount than that specified in section 26, for the purpose of purchasing or constructing public utilities or for repairing the same, to be owned exclusively by such municipalities, and it is the duty of the court, if possible, to so construe the provision as to carry out its purpose. The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption. *State v. Allen, supra.*

The secondary object and purpose of the provision is to provide an annual tax sufficient to pay the interest on the bonds each year, and to provide a sinking fund for the payment of the principal within 25 years. We are convinced that the ordinances providing that a continuing annual tax sufficient to pay the interest when the same shall fall due, and for the purpose of providing a sinking fund with which to pay the principal of said bonds, shall be levied upon all the taxable property within said city, substantially comply with the requirements of section 27, art 10, of the Constitution, in respect to providing funds for paying the interest and principal on bonds issued for the purpose of constructing public utilities.

Fourth. By the eighth paragraph of defendants' return to the alternative writ they contend that section 27, art. 10, of the Constitution, furnished no authority for the issuance of bonds by

an incorporated city or town, and is not a self-executing or self-operating grant of power to any incorporated city or town upon a majority vote of the qualified property taxpaying voters thereof voting at an election to become indebted for the purpose of constructing public utilities or for repairing the same, to be owned exclusively by such city or town, but that said section 27 constitutes merely a limited grant of power to the Legislature of the state to allow or authorize such municipal corporations to incur an indebtedness for the purpose of and subject to the restrictions and requirements in said section mentioned and prescribed.

Section 27, *supra,* reads as follows:

"Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city; Provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

Mr. Chief Justice Williams in *Ex parte Wagner, ante,* p. 33, 95 Pac. 435, in discussing the rule to be applied in determining whether a certain section of the Oklahoma Constitution was self-executing, quotes with approval from *Taylor v. Hutchinson et al.,* 145 Ala. 207, 40 South. 109, as follows:

"'Our Constitution contains many instances of nonself-executing provisions. In these cases there is always some indication that something is left for the Legislature to do, or there is something in the nature of the provision that renders such legislation necessary.'"

Another excellent general statement of when a constitutional

provision is self-executing may be found in the opinion of Mr. Justice Brown in the case of *Davis v. Burke,* 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249:

"Where a constitutional provision is complete in itself it needs no further legislation to put it in force. When it lays down certain general principles, as to enact laws upon a certain subject, or for the incorporation of cities of certain population, or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution. But where a Constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provision. In short, if complete in itself, it executes itself."

Applying the above rules to the case at bar we are irresistibly led to the conclusion that section 27, art. 10, *supra,* is a grant of power to the people of the municipalities of the state and not a limitation upon the Legislature. Some further reasons for reaching this conclusion may be drawn from other provisions of the Constitution. Section 1 of article 2 provides that: "All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare." Probably no Constitution was ever drafted that refers to the people so much power to be exercised by direct vote. Municipal corporations are given the right by direct vote of the people to form their own municipal charters. This general underlying idea that the people themselves have the power by direct vote to control their own affairs argues persuasively that it was the intention of the Constitution to give to municipal corporations directly the right to become indebted by vote of the taxpayers for the construction of public utilities.

It may be conceded that section 26 of article 10 is a limitation upon the power of the Legislature; there the expression is: "No county, city, town," etc., "shall be allowed to become indebted, in any manner, for any purpose, to an amount exceeding, in any

year, the income and revenue provided for such year," etc. This could not be held to mean that any municipality should be allowed to become indebted in any manner, and for any purpose by the assent of three-fifths of the voters thereof. But section 27 is a positive instead of a negative provision. The statement here is, "Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city." It is true the expression "be allowed to become indebted" is used, but the section itself furnished the answer to the question, how allowed? which is "by a majority of the qualified property taxpaying voters of such city or town voting at an election to be held for that purpose. Not that the city may be allowed by the Legislature to become indebted, but by a majority of the taxpaying voters.

Section 41 of article 5 of the Constitution furnished an illustration of the language employed by the framers of the Constitution when they wished merely to give the Legislature power to permit cities to do certain things. It provides "the Legislature may enact laws authorizing cities to pension meritorious and disabled firemen." Here it was perfectly plain that it was not intended to grant this power directly to cities; the presumption is that when, as in section 27 of article 10, the framers of the Constitution used different language, they intended a different meaning. If they had intended merely to provide that the Legislature may allow incorporated cities by a majority of the voters to become indebted for the purpose of constructing public utilities they would doubtless have said so.

Fifth. The defendants further allege in their return that the sewer bonds are invalid because sewers are not public utilities within the meaning of section 27, art. 10, *supra*. That the amount of the proposed waterworks bonds, to wit, $45,000, is in excess

of the income and revenue provided by said city for the year 1908, and therefore said city cannot incur said waterworks indebtedness without the assent of three-fifths of all the voters of said city voting at an election held for that purpose.

There is a dearth of authority on what it takes to constitute a public utility. It is held in *Valley City Salt Co. v. Brown*, 7 W. Va. 191, that the expression "public utility" is synonymous with "public use."

In *Aldridge v. Tuscumbia, C. & D. R. R. Co.*, 2 Stew. & P. (Ala.) 199, 23 Am. Dec. 307, Mr. Chief Justice Lipscomb says: "Whatever is beneficially employed for the community is of public use."

In *Olmstead v. Camp*, 33 Conn. 532, 89 Am. Dec. 221, Mr. Justice McCurdy, speaking for the court, says:

"One of the most common meanings of the word 'use,' as defined by Webster, is 'usefulness, utility, advantage, productive of benefit.' 'Public use' may therefore well mean public usefulness, utility, or advantage, or what is productive of general benefit."

There is probably nothing more conducive to the health, comfort, and convenience of the inhabitants of a city or town than a good system of sewerage. Sewers are always incident to a well-ordered city or town, and certainly must be included within the term "public utilities" as used in section 27, *supra.* And sewers, too, more than any other public utility, are owned exclusively by cities. It frequently happens, indeed, it is the rule, that waterworks systems are owned and operated by private individuals or corporations, but sewers, so far as we are aware, are always owned and operated by the municipalities. To our mind there can be no doubt that the Constitutional Convention, when it drafted the Constitution, and the people when they adopted it, intended to provide for the purchase, construction, and repair of sewers, when they allowed any incorporated city or town in the state, by a majority of the qualified property taxpaying voters of such city or town voting at an election held for that purpose to become indebted in a larger amount than that specified in

section 26 for the purpose of purchasing, and constructing public utilities and repairing the same, to be owned exclusively by such city.

Sixth.    Part of subdivision 9 of defendants' return is devoted to the proposition that the election was illegal because no person was allowed to vote except he was a legal elector of said city. and also a taxpayer; the contention being that section 2 of the Schedule extends and puts in force in the state of Oklahoma the act of Congress entitled "An act to amend an act to prohibit the passage of local or special laws in the territories, to limit territorial indebtedness," etc., approved and in force March 4, 1898, 30 Stat. 252 (section 29, art. 3, c. 12, Wilson's Rev. & Ann. St. Okla. 1903), and article 9, c. 8, p. 115, Sess. Laws Okla. 1905, and that under these acts all qualified electors were entitled to vote at the election held for the purpose of voting upon the issuance of such bonds.    Section 2 of the Schedule provides that:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

If the above acts of Congress and of the Territorial Legislature remain in force in the state of Oklahoma, they are subject to the limitations and extensions contained in sections 26 and 27 of article 10 of the Constitution.

Section 27, art. 10, provides that all municipalities may become indebted for a larger amount than that specified in section 26 upon a majority of the qualified property taxpaying voters of such city or town voting to do so at an election to be held for that purpose.    The election here was held under this section of the Constitution, and it was entirely in conformity with its provisions to allow only qualified property taxpaying voters of said city to vote, notwithstanding article 9, c. 8, p. 115, Sess. Laws Okla. 1905, which purports to give all qualified electors the right

to vote, and notwithstanding that part of section 29, art. 3, c. 12, Wilson's Rev. & Ann. St. 1903, which provides that all the taxpayers of the city are entitled to vote at such elections.

Seventh. It is further urged that by article 9, c. 8, p. 115, Sess. Laws Okla. 1905, such bonds must run for a period of 30 years, payable after 10 years at the option of the city and bear interest payable annually, whereas the waterworks bonds proposed to be issued run for only 25 years and the interest thereon is made payable semiannually. We have elsewhere in this opinion held that section 27, art. 10, of the Constitution, is self-executing. This section provides that "any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same." The language of the part of said section which provides that a sinking fund shall be created sufficient to pay the principal in 25 years, to our mind, amounts to a statement that the bonds issued may run for a period of 25 years. No other interpretation can be put upon this language without changing the evident purpose of the section. There can be no doubt but that the intention of the framers of the Constitution was that the bonds issued under section 27, *supra,* should run for a period of 25 years, and not for a period of 30 years, payable after 10 years at the option of the city, as is provided by article 9, c. 8, p. 115, Sess. Laws. Okla. 1905.

Eighth. The eighth ground of objection is that the proceedings and provisions for the issuance of the waterworks bonds were not in compliance with article 9, c. 8, p. 115, Sess. Laws Okla. 1905, in that no contract providing for the erection or extension of a waterworks system for said city had been submitted to a vote of

Vol. 21—30

466    SUPREME COURT OF OKLAHOMA.

State ex rel. Edwards v. Millar, Mayor, et al.

the people of said city at any general or special election and ratified ·by a majority of the voters of said city voting at such election, and that said city of Norman has no authority to incur said waterworks indebtedness or to issue said waterworks bonds, unless and until the contract providing for the said waterworks improvements has first been submitted to a popular vote and ratified by a majority of .the voters of said city voting at a general or special election held therein.    Article 9, c. 8, p. 115, *supra*, after providing that "all incorporated towns, cities and municipal corporations in this territory, are hereby authorized and empowered to purchase, erect, lease, rent, manage and maintain any system or part of system of waterworks, hydrants and supply of water, telegraphing fire signals or fire apparatus that may be of use in the prevention and extinguishment of fires," further provides that:

"The common council or board of trustees of such city or municipal corporation   are hereby empowered and authorized to assess, levy and collect taxes for the purpose aforesaid, and to do all acts necessary to carry such lease and contracts of purchase, erection, or maintenance into effect, and to pay the stipulated rent or contract prices for the property so leased, purchased, erected or to be maintained, excepting, however, that any such lease or contract for purchase, erection or maintenance which shall stipulate for an annual payment greater than an annual levy of five mills on each dollar of the assessed valuation of such city or municipal corporation shall not be authorized until the contract providing therefor shall first have been submitted to a vote of the people of such city or municipal corporation at any general or special election, and ratified by a majority of the voters of said city or municipal corporation voting at such election."

We are· convinced that the foregoing provision does not apply to indebtedness incurred under section 27, art. 10, of the Constitution.   Section  27,  *supra,* does not place any restrictions upon the people of cities and towns in the matter of providing for the purchase or construction of public utilities or for repairing the same, except 'that said indebtedness shall require the assent of a majority of the qualified property taxpaying voters, and that

provision be made for the payment of principal and interest. It certainly does not contemplate that, after the qualified taxpaying voters give their assent to a bond issue for the purposes named in said section, that before the bonds shall be issued the contract providing for the work shall be submitted to a vote of the people of such city or municipal corporation.

We have noticed all the points raised by the returns to the alternative writ and argued by counsel for plaintiff in their very able and exhaustive brief, and, as hereinbefore indicated, have come to the conclusion, as to such questions, that the bond issues involved in this cause were provided for substantially in accordance with the requirements of law. This being so, and it further appearing by the pleadings and stipulation of the parties that the mayor and councilmen of said city of Norman, in regular session, duly sold to the petitioner, Robert J. Edwards, the waterworks and sewer bonds involved at the price of par and accrued interest, and that the petitioner furnished at his own expense suitable, engraved, and lithographed blank bonds and interest coupons, and that said bonds were by resolution duly adopted by said mayor and councilmen declared sold to said petitioner, and it further appearing that the petitioner has always been, and is still, willing to perform fully and to comply with all said terms of the purchase agreement with said city, and has tendered the purchase price in payment of said waterworks bonds and the purchase price in payment of said sewer bonds, and is ready and willing to pay the same into the treasury of said city of Norman, it follows that he is entitled to the relief prayed for in his petition, and a peremptory writ of mandamus should issue out of this court directed to the said John E. Millar as mayor, and to the said A. R. Clement as city clerk, of said city of Norman, commanding them, and each of them, to execute each and every of said waterworks and sewer bonds, and the interest coupons thereto attached and to affix to said bonds the corporate seal of said city, and to deliver the same to said petitioner, Robert J.

Edwards, upon payment by him of the purchase price therefor. It is so ordered.

All the Justices concur.