COLEMAN v. FRAME, *County Clerk, et al.*

No. 1261.   Opinion Filed May 10, 1910.

(109 Pac. 928.)

1.   MUNICIPAL CORPORATIONS — Indebtedness — Constitutional Limitations — "Public Utilities."   Street improvements do not constitute "public utilities" within the meaning of the term as used in section 27, art. 10, of the Constitution, which provides that: "Any incorporated city or town in this state may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city."

2.   MUNICIPAL CORPORATIONS—Indebtedness — Submission to Voters—Sufficiency of Proposition.   A proposition attempting to refer to the qualified property tax paying voters of a city whether said city shall be allowed to become indebted for the purchase, construction, or repair of public utilities under section 27, art 10, of the Constitution, must be stated in such specific language as to apprise the voters of the nature of the public utility the city wishes to purchase, construct, or repair.

(Syllabus by the Court.)

*Error from District Court, Carter County; S. H. Russell, Judge.*

Action by T. N. Coleman against W. B. Frame, County Clerk of Carter County, and another.   Judgment for defendants, and plaintiff brings error.   Reversed and remanded, with directions.

*J. B. Moore,* for plaintiff in error.
*Ledbetter, Stuart & Bell,* for defendants in error.

KANE, J.   This was a suit instituted by T. N. Coleman, plaintiff in error, against W. B. Frame, county clerk of Carter county, and D. M. Rumph, treasurer of Carter county, defendants in error, defendants below, in which the plaintiff in error prayed for a writ of injunction to restrain the defendants, as county clerk and county treasurer, respectively, from performing any duty or doing any

act imposed upon them by law tending to subject the property of plaintiff in error to the payment of taxes assessed for the purpose of paying the interest on certain street improvement, and fire department bonds, and creating a sinking fund for their final payment. The court below refused to grant the injunction, and to reverse this order this proceeding in error was commenced.

It is conceded by the parties that the indebtedness sought to be created by the issuance of these bonds will exceed the limit placed upon such municipalities by section 26, art. 10, of the Constitution, and that if the city is allowed to incur further indebtedness it must be under section 27 of the same article, which provides that:

"Any incorporated city or town in this state may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city."

The grounds upon which the plaintiff contends he is entitled to relief are that the purposes for which the bonds are to be issued, to wit, "improvement of its streets and alley crossings, to be owned exclusively by said city," and "the improvement of a fire department," do not fairly fall within any of the provisions of section 27, *supra,* granting the right to vote bonds, to wit: (a) For the purpose of purchasing public utilities; (b) for the purpose of constructing public utilities; (c) for the purpose of repairing the same.

The propositions presented to the voters were as follows:

(1) "Shall the city of Ardmore, Okla., be authorized to issue the negotiable bonds of said city in the aggregate amount of $35,000 to raise means for the improvement of its streets and alley crossings to be owned exclusively by said city?"

(2) "Shall the city of Ardmore, Okla., be authorized to issue the negotiable bonds of said city in the aggregate amount of $20,000 to raise means for its improvement of the fire department?"

The election was ·held in pursuance to the requirement of an ordinance passed by the mayor and city council of the city of Ardmore, known as "Ordinance No. 250," wherein it was ordained that:

"A special election be, and hereby is, called to be held in the city of Ardmore, Oklahoma, on the 23d day of March, A. D. 1909, for the purpose of submitting to the qualified property tax paying voters of said city the following proposition: * * * Shall the city of Ardmore, Oklahoma, be authorized to issue the negotiable bonds of said city in the aggregate amount of $35,000 to raise means for the improvement of its streets and alley crossings to be owned exclusively by said city? Shall the city of Ardmore, Oklahoma, be authorized to issue the negotiable bonds of said city in the aggregate amount of $20,000 to raise means for its improvement of the fire department."

After these propositions were submitted to the voters and duly approved, the mayor and board of commissioners of the city of Ardmore passed an ordinance entitled, "An ordinance authorizing and directing the execution and issuance of the negotiable coupon bonds of the city of Ardmore, Carter county, Oklahoma, for the purpose of providing the necessary funds for the construction of public utilities in and to be owned exclusively by said city, to wit: * * * In the amount of $35,000 for street improvements; in the amount of $20,000 for fire department improvements," etc., wherein it was provided that:

"For the purpose of providing the necessary funds for the construction of said additional * * * street improvements and fire department improvements, to be owned exclusively by said city as stated in the preamble hereof, there shall be and there are hereby ordered and directed to be issued the negotiable coupon bonds of said city as follows: * * * Street improvement bonds to the amount of $35,000, and fire department bonds to the amount of $20,000."

The sole question presented by counsel is: Do the above classes of improvements fall within the purview of "public utilities" as the term is used in section 27, *supra?* It has been held by this court that the following municipal improvements fall· within the

term "public utilities" as used in section 27, *supra:* "Waterworks and sewers," *State v. Miller, Mayor,* 21 Okla. 448, 96 Pac. 747; "a convention hall to be owned, controlled and used exclusively by a city to accommodate public gatherings of people," *State v. Barnes,* 22 Okla. 191, 97 Pac. 997; "a public park," and "the construction of sidewalks around the same, and a driveway through it and the pavement of the streets surrounding it, so as to make the same more convenient and serviceable as a public park," *Barnes v. Hill,* 23 Okla. 207, 99 Pac. 927.

Counsel for defendants in error insist that the questions raised by counsel for plaintiff in error have been determined adversely to them by the foregoing cases; that, applying the reasoning of the court therein to the case at bar, there can be no question that "street improvements" are public utilities within the meaning of the term as used in section 27, *supra.* Granting that streets and street improvements are public utilities, it does not follow that they are the class of public utilities referred to in said section. To fall within the meaning of the term as there used, they must not only be public utilities but they must also "be owned exclusively by said city." In *State v. Millar, supra,* after discussing the meaning of the term "public utilities" as used in section 27, this court held that sewers are always incident to a well-ordered city or town, and certainly must be included within the term "public utilities" as used in section 27, *supra.* And sewers, too, more generally than any other public utility, are exclusively owned by cities. The same may be said of a waterworks system, a convention hall, a public park, and its repair or improvement, etc. But under the laws of this state this is not true of a street. Section 7831, Comp. Laws Okla. 1909, provides that:

"All avenues, streets and alleys in cities which are or may hereafter be laid out agreeable to law, shall be and are hereby declared public highways."

Section 7832 of the same article provides that:

"Each incorporated city of more than three hundred inhabitants, shall constitute a separate road district, and the corporate

authorities of such corporation shall have power to appoint a road overseer for such corporation, fix his term of office and compensation," etc.

Section 942, Comp. Laws Okla. 1909, provides that:

"Any city, town or village organized under and by virtue of a special act or charter or under and by virtue of any general law of Oklahoma is hereby authorized and empowered by and through its proper municipal officers to lay out, open, grade and otherwise improve the streets, alleys, sewers, sidewalks and crossings. therein and to keep them in repair and to vacate the same."

Whilst it is true that streets are directly under the charge and control of municipal authorities, this control is subject to the paramount authority of the state. *Lennon v. Mayor*, 55 N. Y. 361; *In re Sackett St.*, 74 N. Y. 95; *Perry v. New Orleans, etc., Co.*, 55 Ala. 413, 28 Am. Rep. 740; *Barney v. Keokuk*, 94 U. S. 324, 24 L. Ed. 224. And this primary legislative power over municipal streets is itself subject to the special interest of the abutting property owners therein, which may not be interfered with without fair compensation for the loss actually sustained. Elliott on Roads & Streets, § 22; *Kalteyer v. Sullivan*, 18 Tex. Civ. App. 488, 46 S. W. 288.

"Individual owners of abutting property have a private interest in the highway distinct from the public of which they cannot be deprived without compensation." (Elliott on Roads & Streets, § 403.)

"The owner who dedicates ground for a street creates an easement extensive enough to permit the city to make any legitimate public use of it which does not impair the right of passage or the right of ingress and egress to and from adjoining property. So, when the land is taken under the right of eminent domain all is taken that is necessary to make the street a public way in all that the term implies." (Elliott on Roads & Streets, § 407.)

Further discussing the same subject, in section 411, Mr. Elliott says:

"We have employed the term 'easement' as descriptive of the estate which the public acquires in a road or street, and we think the term an appropriate and significant one. The later English

cases, building upon a distinction, fanciful rather than substantial, hold that the right which the public acquires is not an easement. In our judgment the distinction is too subtle and shadowy to be of any practical utility and is the result of a refinement made at the sacrifice of sound principle. At all events, the use we have made of the term is fully sanctioned by the earlier English cases and by the American authorities. We believe that the right of the public is an easement, and that the owner of the fee remains the owner of the soil, springs, mines, quarries, timber, and the like, except in so far as the public officers may have a right to use suitable materials for improving or repairing the road."

The foregoing authorities make clear, to our mind, the distinction between that class of public utilities which may be owned exclusively by cities, the purchase, construction, and repair of which is provided for by section 27, *supra,* and the class in which the municipality has only an easement; the fee remaining in the abutting owner of the soil. It is almost the universal practice of the states of the Union in framing their Constitutions to place limitations upon the power of taxation by municipalities. This unlimited power to assess and collect taxation even for public utilities is not conferred upon municipalities by any state, so far as we are aware, except our own. Some states, such as Utah and Washington, permit municipalities to tax beyond the ordinary limit, for public utilities; but in these states public utilities are specifically confined by the Constitution to "water, artificial light and sewers, when the works for such water, artificial light or sewers shall be owned and controlled by the municipalities." Section 6, art. 8, Const. Wash. Section 4, art. 14, Const. Utah, is substantially the same as section 6, art. 8, of the Washington Constitution. It was for the purchase, construction, and repair of this class of public utilities the framers of the Constitution provided by section 27, *supra,* and the court will not by construction so broaden the term as to practically remove all restrictions upon the debt creating powers of the municipalities of the state.

The second proposition submitted to the people is also too general. The term "fire department improvements" includes, no

doubt, many things that may be "public utilities"; but it also includes many that are not. By section 946, Comp. Laws Okla. 1909, all incorporated towns, cities, and municipal corporations in this state are authorized and empowered to purchase, erect, lease, rent, manage, and maintain any system or part of system of waterworks, hydrants, and supply of water, telegraphing, fire signals, or fire apparatus that may be of use in the prevention and extinguishment of fires, and to assess, levy, and collect taxes for said purposes, and to do all acts necessary to carry such lease and contracts of purchase, erection, or maintenance into effect. All such property purchased to be exclusively owned by the city, under the former decisions of this court, may well be classed as "public utilities"; but before section 27, *supra*, may be invoked to authorize their purchase, construction, or repair, it will be necessary to submit the question of its purchase to the people in such a way that the funds arising from the indebtedness incurred may not be used for any other purpose. A proposition attempting to refer to the qualified property tax paying voters of a city whether said city shall be allowed to become indebted for the purchase, construction, or repair of public utilities under section 27, art. 10, of the Constitution, must be stated in such specific language as to apprise the voters of the nature of the public utility the city wishes to purchase, construct, or repair.

Under the circumstances, we are of the opinion that the plaintiff in this case was entitled to the relief prayed for.

The judgment of the court below is, therefore, reversed, and the cause remanded, with directions to proceed in accordance with this opinion.

All the Justices concur.