## CITY OF WOODWARD *et al.* v. RAYNOR.

No. 2154.    Opinion Filed October 17, 1911.

1. **MUNICIPAL CORPORATIONS — Indebtedness — Referendum — Ballot Title—Sufficiency.** A proposition, referring to the qualified property tax paying voters of a city whether said city shall be allowed to become indebted for the purchase, construction, or repair of public utilities under section 27, article 10, of the Constitution, set forth in the ballot title used in the election held for the purpose of voting on the proposition, read: ''Shall the city of W., W. county, Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds to the amount of $30,000.00 for the purpose of providing funds for the construction of an electric light plant, in and to be owned exclusively by said city . . . . .'' **Held,** that by thus notifying him that the kind of public utility proposed was ''an electric light plant to be owned exclusively by the city,'' the voter was sufficiently apprised of the nature of such utility within the contemplation of said section of the Constitution and the rule laid down in Coleman v. Frame, 26 Okla. 193.

2. **INJUNCTION—Grounds—Mere Apprehension of Injury.** A temporary injunction should never be granted because of the mere apprehension of the petitioner that injury may be done. And where such injunction is granted upon the allegations of the petition based upon such grounds, the same will be reversed on appeal.

(Syllabus by the Court.)

*Error from District Court, Woodward County; R. H. Loof-bourrow, Judge.*

Action by John Raynor against the City of Woodward and others. From an order granting a temporary injunction, defendants bring error. Reversed and remanded with directions.

*Fred M. Elkins, Chas. R. Alexander,* and *Chas. A. Loomis,* for plaintiffs in error.

*David P. Marum* and *Devereux & Hildreth,* for defendant in error.

TURNER, C. J. From an order granting a temporary injunction, entered in the district court of Woodward county, November 11, 1910, restraining them from issuing a certain $30,000 worth of municipal electric lighting bonds described in plaintiff's petition, and enjoining defendants from doing any act imposed by law tending to subject the property of plaintiff to the

payment of taxes assessed to pay interest thereon and create a sinking fund, plaintiffs in error, defendants below, bring the cause here. It is assigned that the court erred in overruling the demurrer, in that the petition fails to state facts sufficient to constitute a cause of action. The petition is filed by plaintiff, John Raynor, a resident taxpayer of said county and of the city of Woodward, who, after alleging the corporate existence of said city and that defendants, Frank K. Tucker and W. H. Wilcox, are respectively the duly elected county clerk and county treasurer of said county; further alleges that pursuant to ordinance No. 88 of the city council of said city, passed and approved July 8, 1910, entitled:

"An ordinance relative to the construction of an electric light plant and additions, extensions and repairs, to a system of waterworks in, and to be owned exclusively by the city of Woodward, Woodward county, Oklahoma, and calling an election for the purpose of submitting to the qualified property taxpaying voters of said city, the proposition of issuing negotiable coupon bonds of said city of the sum of $65,000.00 for said public utilities; being $30,000.00 for the construction of said electric light plant, and $35,000.00 for the construction of said addition, extension and repair to the said system of water works."

—and pursuant to a proclamation of the mayor of said city calling the same, an election of the resident taxpaying voters of said city was held on August 17, 1910, whereat there was submitted to said voters, pursuant to art. 10, sec. 27, of the Constitution, the proposition indicated on the ballot prescribed by said ordinance and set forth in said proclamation and used at said election, which read:

"Shall the city of Woodward, Woodward county, Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds to the aggregate amount of $30,000.00 for the purpose of providing funds for the construction of an electric light plant in and to be owned exclusively by said city; and levy and collect an annual tax upon all of the taxable property in said city sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within 25 years from their date, said bonds to be dated September 1, 1910, and to become due and payable at such

time or times, but not more than 25 years from their date, as the council may prescribe, and to bear interest at the rate of not to exceed six per cent per annum, payable semi-annually.

"(    )  Yes.                    (    )  No."

—that at said election there were cast for the proposition 173 votes and against the proposition 59 votes, making a majority of 114 votes in favor of the bonds for the construction of the electric light plant. (There is no controversy over the water-works bonds.) That by virtue of said ordinance and vote said city is "now proposing and intending, and unless prohibited by the order and injunction of this court, will issue bonds for the establishment of said light plant to the amount of $30,000, and will levy a tax on all the property in the city of Woodward and on the property of this plaintiff, among others, to establish a sinking fund to pay the principal at maturity," all of which he says will be a cloud on his property in said city. He alleges that said ordinance and proclamation are indefinite and uncertain, "in that said proclamation and ballot title do not apprise the voters of said city of the extent of the alleged utility therein proposed, in that the said proclamation and ballot title leave it indefinite and uncertain as to whether it was the intention to submit a proposition to the people limiting the proposed electric light plant for public use only, or whether it was intended to maintain and operate a mercantile electric plant"; and that said submission and ballot title are void because, he says, they do not specifically and definitely apprise the voter of the nature of the public utility sought to be constructed, as required by the Constitution and laws of the state. He further alleges that on January 19, 1906, the defendant city entered into a contract with the Woodward Cotton Company, a domestic corporation, whereby it was agreed that said company would furnish to said city for a term of 20 years such arc lights as it might need to light its streets and public places at $10 per arc light per month (setting forth the contract); that said franchise granted by the city to said company on September 29, 1905, by ordinance No. 54, set forth in the petition, was duly accepted

by said company, which said franchise was to run for 20 years; that in a certain action in the Circuit Court of the United States for the Western District of Oklahoma, wherein said company was plaintiff and said city was defendant, it was alleged by plaintiff that said city intended to furnish all the lights for the lighting of its streets and public places by the municipal lighting plant provided for in said ordinance No. 88; that said city therein denied that it intended to violate said contract set forth in plaintiff's bill of complaint, and denied that it intended to refuse to allow plaintiff to furnish said city 10 arc lights mentioned in said contract, and further denied that defendant was threatening and intending to abrogate said contract, but stated that it had never taken any action in reference to or concerning said contract other than to approve, allow, and pay the monthly bill presented thereunder by plaintiff; that by reason of said pleadings (set forth *verbatim*) duly verified, said city expressly states and avers that it does not intend to make use of its municipal lighting plant provided for in said ordinance No. 88 for the purpose of lighting the streets and public places of said town, but that it does intend for 14 years to come to pay to said company the sum of $10 per month for arc lights for lighting the streets and public places of said city; that by reason of the concealment of those facts from the voter and leading him by the proclamation and ballot title to suppose otherwise, the proposition contained in the ballot title was so unfairly and fraudulently submitted as to render the election illegal and void; that unless restrained said city "will erect an electric lighting plant under said ordinance and vote for mercantile purpose, and for the purpose of furnishing electricity at a profit to the private individuals and corporations, and this plaintiff says that he is informed and believes, and so charges, that an electric lighting plant for mercantile purposes, and for the purpose of selling electricity for private use, at a profit, is not a public utility, and that the issuance of bonds and the levy of tax on the property of this plaintiff, and others, for such purpose, is not authorized by the laws of the state of Oklahoma, and is illegal and void"—and prays that the

city be restrained from issuing said bonds, etc., and for general relief.

There is no question that the bonds carried and were properly so declared. Against the demurrer, it is urged that the ballot title is insufficient to warrant the issuance of the bonds and the levying of the taxes, in that:

"Nothing is said in this proposition as to how this lighting plant is to be *operated, or for what it is to be used;* the voter is left in the dark as to whether the city intends to operate this light plant itself or whether it intends to use it as a mercantile plant and to sell elecricity at a profit. Nothing is said in the ballot title that the money to be raised by the issuing of these bonds and the levying of this tax is to be used solely for the purpose of constructing and operating an electric light plant; its manner of operation is left out entirely. The extent and size of the electric light plant is not mentioned. Nothing is said in this ballot title and there is no restriction on the use of the money, and before taxes can be levied and the money of the citizen taken, under section 27, article 10, it is necessary to submit the question to the people in such a way that the funds arising from the indebtedness incurred may not be used for any other purpose."

The only authority cited in support of this proposition is *Coleman v. Frame,* 26 Okla. 193, 109 Pac. 928, and the rule there laid down is invoked, that:

"A proposition attempting to refer to the qualified property tax paying voters of a city whether said city shall be allowed to become indebted for the purchase, construction or repair of public utilities, under section 27, article 10, of the Constitution, must be stated in such specific language as to apprise the voter of the nature of the public utility the city wishes to purchase, construct, or repair."

When the ballot title submitted at said election, as it did, the proposition of the incurring of an indebtedness by the city of $30,000.00 for the purpose of providing funds "for the construction of an electric light plant to be owned exclusively by said city," the same was sufficiently specific, as to the nature of the public utility the city wanted to construct, to fall squarely within the rule laid down in that case. The requirement to ap-

prise the voter of the "nature" of the public utility meant that the ballot title should in specific language notify him only of the kind, sort, or character of such public utility. In *State v. Murphy,* 23 Nev. 30, following *State v. Birchin,* 9 Nev. 25, the word "nature," when used in a statute requiring a recognizance in a criminal case to state the nature of the offense of which the defendant was charged, was held to mean the sort, kind, character, or species of the offense. See, also, Web. Inter. Dict.

In *State ex rel. v. Millar, Mayor, et al.,* 21 Okla. 448, 96 Pac. 747, we held that:

"The term, 'for the construction of waterworks in said city, to be owned and operated by said city,' printed on the ballot used at an election held for the purpose of submitting to the qualified electors of a municipality the question of incurring indebtedness for the construction of public utilities under section 27, art. 10, of the Constitution, is sufficiently comprehensive to include such work as re-equipping and making extensions to an existing water works system."

Hence, by notifying him that the kind of public utility proposed was "an electric light plant to be owned exclusively by the city," the voter was sufficiently apprised of the nature of such utility within the contemplation of the rule in the Frame case and said section of the Constitution.

It is next urged that the question:

"Is a municipality authorized to issue bonds and to support by taxation, an electric light plant for the purpose of selling electricity to private persons at a profit, and if they are, can they do so without appropriating in the ordinance, ordering the election, the net income to the payment of the interest and principal on the bonds?"

—is presented on the face of the petition; that the court in overruling the demurrer thereto and granting the injunction answered it in the negative, and that in so doing the court was right. We cannot concede the major premise, for the reason that the petition fails to state facts sufficient to show a threatened injury, but, in effect, shows no reasonable ground for apprehending that the city contemplated or was proposing to issue the bonds in question "to support by taxation an elaborate light

plant for the purpose of selling electricity to private persons at a profit." To restrain on that ground, the petition must state facts sufficient to show that reasonable grounds existed for apprehending that the threatened injury was about to be attempted. This was not done, even by fair intendment. The petition states no more than a bare apprehension of injury. On this point, after alleging the ballot title to be so indefinite and uncertain as to leave it doubtful whether it was thereby intended to submit to the voters the proposition limiting the proposed electric light plant to public use only or whether it was intended to maintain and operate it as a "mercantile electric plant," the petition seeks in vain to work out an inferential threat of injury on the part of the city to use it for the latter purpose and for "selling electricity to private persons at a profit," by further alleging, in effect, that the city was under contract with a certain company whereby the former agreed to accept and the latter agreed to furnish, as we read the contract, 10 electric arc lights at so much per light per month for 20 years, during which the city had granted and said company had accepted a franchise to construct, operate, and maintain an electric light plant in said city; that in a certain cause theretofore pending in a certain court between said company and the city the former pleaded that the latter intended to furnish its own light by the municipal lighting plant, to pay for which the bonds in question are sought to be issued; that the city denied it sought to violate or was threatening to abrogate the said contract with said company and that it refused to allow said company to furnish the lights it agreed to accept under said contract, and that it had never taken any action on the same other than to live up to said contract. From this the pleader then deduces, but not to our satisfaction, and charges that the city does intend to keep its contract with said company and not make use of its said proposed lighting plant for lighting its streets and public places, and hence (although the petition does not so charge, the pleader would have us infer, which we cannot fairly do) a threatened injury, to wit, that the city must be intending to use said plant for selling electricity to

private persons at a profit. And without alleging any other ground upon which to base a threatened injury, or, indeed, without alleging that any threat of injury was ever made, the pleader draws the conclusion, amounting to no more than the mere apprehension of an injury—not even threatened—that the city, unless restrained, "will erect an electric lighting plant, under said ordinance and vote, for mercantile purposes, and for the purpose of furnishing electricity at a profit to the private individuals and corporations, and this plaintiff says that he is informed and believes, and so charges, that an electric lighting plant for mercantile purposes, and for the purpose of selling electricity for private use, at a profit, is not a public utility, and that the issuance of bonds and the levy of tax on the property of this plaintiff, and others, for such purpose, is not authorized by the laws of the state of Oklahoma, and is illegal and void."

Where there exists, as here, no reasonable grounds for apprehending that the injury sought to be enjoined will be attempted, a temporary injunction should not be granted; or if granted, it should be dissolved. This was our holding in *Hodgins v. Hodgins,* 23 Okla. 625. This was an appeal in a divorce suit from an order of the district court of Comanche county dissolving a temporary injunction obtained on the allegations of defendant's cross-petition, which was sworn to, and in substance charged plaintiff with cruelty and nonsupport; that by reason of financial assistance from her father plaintiff was able to provide a home for defendant and her children and bought a relinquishment to a certain tract of land therein described, whereon he made homestead entry. She further alleged "that it is the present intention of plaintiff, as she believes, to wholly deprive her and her children of their said home and that her father has given her and to appropriate same to his own use and benefit. * * * that if defendant be not restrained he will relinquish title to the above tract of land, the title to which is still in the government, back to the government, or sell the same and the improvements thereon and deprive defendant of the benefits thereof." She prayed for and obtained a temporary injunction

restraining plaintiff from relinquishing said homestead entry. In passing we said:

"To entitle defendant to a temporary injunction, it was necessary for her to show clearly and by proper averment in her cross-petition that plaintiff had done, or was threatening to do, some act which would produce irreparable injury to her, and that such act would in all probability be committed unless restrained.  16 Am. & Eng. Enc. Law, 360, 361."

And, speaking to the allegations of the cross-petition:

"Such allegations expressed nothing more than a bare apprehension of injury, which, so far as the face of the petition shows, is groundless, and, which, it is well settled, is not sufficient, as courts cannot grant injunctive relief to allay the fears and apprehensions of individuals.  16 Am. & Eng. Enc. Law, 361"

—and affirmed the judgment of the trial court.

In support of this doctrine we cited *Lutheran Church v. Maschop,* 10 N. J. Eq. 57; *Penn. Ry. Co. v. National Docks, etc., Ry. Co.,* 52 N. J. Eq. 555; *Goodwin v. N. Y., etc., R. R. Co.,* 43 Conn. 494; *Sherman v. Clark,* 4 Nev. 138; *Home Ins. Co. v. Nobles et al.* (C. C.) 63 Fed. 642; *Mariposa Co. v. Garrison,* 26 How. Prac. (N. Y.) 448.

In *Lutheran Church v. Maschop, supra,* appellant was a religious corporation and appellee its pastor. He had been deposed for misconduct by a vote of the members of its congregation, acting under rules and regulations adopted for its government, but sought to officiate in spite of such deposition. In passing on a bill which sought to enjoin him, the court denied relief, and said:

"The bill further alleges, that Mr. Maschop intends to take measure to deprive such members as are opposed to him of their right to vote, and compel such members to take pews, and contribute to his support, or else to be disfranchised of any right to vote in matters affecting the church property, and so to depose the present trustees, and thereby obtain undisputed possession of the church for his own purposes. The court is asked to interfere to prevent this. From anything that appears upon the face of this bill, these apprehensions of the complainants are entirely groundless. The court cannot grant an injunction to

allay the fears and apprehensions of individuals; they must show the court that the acts against which they ask protection are not only threatened, but will, in all probability, be committed to their injury."

In *Goodwin. v. N. Y., etc., R. R. Co., supra,* an order and decree of the superior court, dismissing the bill, was brought to the Supreme Court of Errors. Among other things, petitioner, in substance, on oath, as to defendant alleged that it had theretofore issued free passes to the members of the General Assembly, that he was apprehensive that the present officers would issue free passes to the said members, to be elected after the date of his petition, and prayed that it be restrained from doing so. On the petition, so verified, the court issued the injunction as prayed, and at a subsequent term made findings of fact and dismissed the bill. The Supreme Court of Errors affirmed the judgment of the superior court, and in passing said:

"The only remaining clause in the finding which has a bearing on the question in hand, and on which any claim can be made for a judgment in favor of the petitioner, is this, that the petitioner was apprehensive, from the previous course of the company's business, and from the position taken by some of the officers at the last meeting of the stockholders of the company, that the present officers would issue complimentary tickets to members of the General Assembly to be elected after the date of his petition. No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without substantial reasons. Indeed, they may be absolutely groundless. Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satisfactory reasons. Not the applicant only, but the court must be satisfied that a wrong is about to be done, or an injury is about to be sustained, which, practically, will be irreparable, before resort should be had to this extreme power. This record shows no such state of things. Certain reasons, indeed, are given why the petitioner entertained apprehensions as to the course which these respondents in the future might pursue; but the record is silent as to whether those apprehensions were well or ill-founded. There is no finding by the court that the respondents contemplated doing, or

proposed doing, any act which the petitioner sought to restrain them from doing, and so the case stands merely on the apprehensions of the petitioner; quite too narrow a basis to support an injunction."

Taking this view of the cause, it would be unprofitable to discuss, assuming that it was properly pleaded that the city contemplated and was threatening to construct and use said plant for selling electricity to private persons at a profit, whether the city could be enjoined from so doing in view of art. 18, sec. 6, of the Constitution, giving to every municipality within the state the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation, etc.

We are therefore of opinion that, as the petition failed to state facts sufficient to constitute a cause of action, in that it failed to state more than a bare apprehension of injury, which on the face of the petition appeared to be groundless, the court erred in granting the temporary injunction complained of, and for that reason the cause is reversed and remanded, with directions to dismiss the petition.

All the Justices concur.