**DENTON v. CITY OF SAPULPA et al.**

No. 11094—Opinion Filed April 20, 1920.

(Syllabus by the Court.)

**Municipal Corporations—"Public Utilities"—Cemeteries.**

The words "public utilities", as used in section 27, art. 10, of the Constitution of the state of Oklahoma, embrace a burial ground or cemetery, to be purchased, owned, and controlled by a city and opened to the use of the public under reasonable regulations for the burial of the dead.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Injunction by Joseph O. Denton against the City of Sapulpa and certain of its officers. Judgment for defendants, and plaintiff brings error. Affirmed.

Robt. B. Keenan, for plaintiff in error

L. J. Burt, for defendants in error.

BAILEY, J. This was an action begun in the district court of Creek county, by plaintiff in error, a resident citizen and taxpayer of the city of Sapulpa, Creek county, Oklahoma, on behalf of himself and other taxpaying citizens, seeking to enjoin the officers of the city of Sapulpa from issuing, disposing of, and delivering certain negotiable coupon bonds of the city of Sapulpa, which bonds had been regularly and lawfully voted at an election held in the city of Sapulpa. Said bonds were voted for the purpose of providing funds for the purchase of lands for cemetery purposes, to be owned, controlled, and managed exclusively by said city of Sapulpa.

The trial court denied the application for injunction. Under an agreed statement of facts, the court found that the city of Sapulpa was a city of the first class; that the election held for the purpose of determining whether such bonds should be issued was duly called, held, and conducted; that the land to be purchased and owned was to be controlled and managed exclusively by the city of Sapulpa for cemetery purposes. The court concluded, as a matter of law, that the city is acting within its legal and lawful authority in voting and issuing said bonds. Plaintiff in error in his brief says:

"The transcript will disclose that the facts relevant to the determination of this controversy were agreed upon by both parties and that there is but one proposition of law involved: Is a public cemetery a public utility?"

The answer to this question must be found in the provision of section 27, art. 10, of the Constitution of the state of Oklahoma, which provides:

"Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section 26, for the purpose of purchasing or constructing 'public utilities', or for repairing the same, to be owned exclusively by such city."

This court has had frequent occasion to consider the meaning of the words "public utilities", and to decide what constitutes a public utility within the meaning of the pro-

visions of the Constitution; this court having held that such public conveniences and necessities as sewers, a convention hall, public parks, and fire stations and equipment came within the embrace of the term "public utilities." State ex rel. Edwards v Miller, 21 Okla. 448; State ex rel. Manhattan Const. Co. v. Barnes, 22 Okla. 192, 97 Pac. 997; Barnes v. Hill, 23 Okla. 207, 99 Pac. 927; City of Ardmore v. State, 24 Okla. 862, 104 Pac. 913; Coleman v. Frame, 26 Okla. 193, 109 Pac. 928, 31 L. R. A. (N. S.) 556; Hooper v. State, 26 Okla. 646, 110 Pac. 912; Dingman v. City of Sapulpa, 27 Okla. 116, 111 Pac. 329; Oklahoma City v. State ex rel., 28 Okla. 780, 115 Pac. 1108. These cases indicate the weight and consideration given by this court to the elements of public safety, health, comfort, and public control as such elements may affect and determine whether such utilities constitute a public utility, but this court has also defined these words in a more general sense, as is stated in State ex rel. Manhattan Const. Co. v. Barnes, supra, where it is said:

"The term 'public utility', as used in this section of the Constitution, was before this court for construction in State v. Miller, 21 Okla. 448, 96 Pac. 747. In that case it was held that sewers are public utilities within the meaning of the term as used in the Constitution, and Valley City Salt Co. v. Brown, 7 W. Va. 191, in which the term 'public utility' is construed as being synonymous with 'public use', was cited with approval."

The meaning of the term "public use" is then given careful consideration. Accepting this application of the words "public utility", we are not without authority, for it was said in Evergreen Cemetery Association v. City of New Haven, 23 Conn. 234, 21 Am. Rep. 643:

"The use of land for a burying ground is a public use, and for such a purpose, it may be taken, if need be, under the right of eminent domain."

And in Farneman et al. v. Mt. Pleasant Cemetery Ass'n, 35 N. E. 271, the Supreme Court of Indiana says:

"It seems to be settled law that lands may be condemned for the purpose of a public cemetery where the public in general have a right to obtain interment, and that lands taken for the purpose of enlarging a public cemetery is devoting it to a public use."

See, also, Balch v. Commissioners, 103 Mass. 106. And likewise it is held in Starr Burying Ground Ass'n v. North Lane Cemetery Ass'n (Conn.) 58 Atl. 467:

"Where land is appropriated for a burying ground by a town or municipal corporation, * * * and the land so appropriated is open, under reasonable regulations, to the use of the public for the burial of the dead, it may become a public burial ground, and its use a public use."

Burial places are indispensable, and so strongly has it been recognized that the proper and decent sepulture of the dead is necessary, not only to the health, but as a ministration to the sensibilities and feelings of the living, that it has been held:

"Convenient to the city of the living, a depository of the dead must be established and maintained. It concerns the public health, and if such places were not prepared by private enterprise, it would be the duty of the state to act in the premises." Town of Lake View v. Cemetery Co., 70 Ill. 191, 22 Am. Rep. 71.

The sentiment of mankind and the civilization of the age require and demand that these "silent cities" be furnished and maintained, and the public peace, comfort, and contentment of the people would be disturbed if such places were wanting. The necessity for the city to make such provisions is not a question for our consideration, but has been concluded by the act of the municipal authorities.

We have not deemed it necessary to refer to or discuss the statutory provisions relating to the acquisition, management, and control of cemeteries by municipalities, for the reason that such provisions of the statute could only tend to strengthen the views we have announced. We think the situation and facts presented easily bring the purposes within the term "public use", and therefore within the term "public utility", as used in the section of the Constitution to which reference has been made.

We therefore hold that the trial court did not err in the judgment rendered, and the same is affirmed.

OWEN, C. J., and RAINEY, KANE, PITCHFORD, JOHNSON, and HIGGINS, JJ., concur.