STATE ex rel. CITY OF PAULS VALLEY v. WILLIAMSON, Atty. Gen.

No. 34326. Jan. 17, 1950.

*213 P. 2d 852.*

S. H. King, City Atty., of Pauls Valley, for plaintiff.

Mac Q. Williamson, Atty. Gen., and Mainard Kennerly Asst. Atty. Gen., for defendant.

ARNOLD, V.C.J. Original proceeding by the city of Pauls Valley, a municipal corporation, against Mac Q. Williamson, Attorney General and ex officio bond commissioner of the State of Oklahoma, for a writ of mandamus to compel the approval of an issue of bonds by said city in the sum of $27,700, the proceeds of which are to pay for the construction of a bridge and approaches within said city. This project is a general improvement not within the provisions of article 10, sec. 27, Const., but is a part of the permanent improvement of West Paul avenue and North Jones avenue in said city and connecting the same so as to afford a continuous route of travel over and across Rush creek. This does not constitute a public utility. See Dingham v. City of Sapulpa, 27 Okla. 116, 111 P. 319; Hooper v. State, 26 Okla. 646, 110 P. 912; Coleman v. Frame, 26 Okla. 193, 109 P. 928; State ex rel. City of Shawnee v. Williamson, 186 Okla. 278, 97 P. 2d 74; State ex rel. City of Ada v. Williamson, 201 Okla. 54, 207 P. 2d 922.

By a written stipulation of the parties the proceedings leading to the issuance of these bonds were shown to be in all respects regular and in conformity to law; the only reason of the bond commissioner for declining to approve the same is that less than three-fifths of

the qualified taxpaying voters voting at the election voted for the issuance of said bonds.

It appears from the stipulation of the parties that when the proposition of issuing said bonds was submitted to the voters of the city, two forms of ballots were provided, one on white paper to be used by the qualified taxpaying voters and the other on yellow paper to be used by qualified nontaxpaying voters; that less than three-fifths, but more than 50 per cent, of the qualified taxpaying voters voting at said election cast their ballots in favor of the issuance of said bonds, but that a combination of the two classes of voters voting in favor of the issuance of the bonds showed more than three-fifths in favor thereof.

There is very little difference in the position of plaintiff and defendant in the briefs filed by them, both citing and quoting from some of the same decisions by this court involving the construction and application of section 26, art. 10, Const., and certain statutes of the Territory of Oklahoma extended to and continued in force in the state by section 2 of the Schedule to the Constitution where applicable and not repugnant to the organic law. Plaintiff states its contention in the following proposition:

"Title 11 O. S. 1941 §645, insofar as the term 'qualified taxpaying voters' used in said section, has been abrogated or nullified by Article 10, Section 26, of the Constitution and said term is in conflict with and in violation of said constitutional provision."

Defendant's response to this proposition is in the form of a question, as follows:

"Did the adoption of Sec. 26, Art. X of the Oklahoma Constitution supersede and render inoperative that provision of 11 O. S. 1941 §645 which requires the approval of 'three-fifths of the qualified *property tax-paying voters*' voting at an election for the issuance of bonds for making improvements of a general nature, in order for a city to issue bonds thereunder; or, may a city issue bonds for said purpose if the proposition receives the approval of 'three-fifths of the *voters* thereof, voting at an election to be held for that purpose', as provided by Sec. 26, supra?"

In North et al. v. McMahan, 26 Okla. 502, 110 P. 1115, this court considered what is now 19 O. S. 1941 §734, authorizing the purchase or erection of courthouses by county commissioners and which provided that the issuance of said bonds should be first submitted to the people for their approval and that "a majority of the qualified property taxpaying voters voting at any general election, or special election called by the board of county commissioners for the purpose, shall have declared by their votes in favor of issuing such bonds." The first paragraph of the syllabus to that case, so far as material here, reads:

" . . . said act, in so far as the same provides that said bonds shall not be issued until a 'majority' of the qualified electors voting at said election shall have declared by their votes in favor of issuing such bonds, is repugnant to said article 10, §26, in so far as it provides that said bonds shall not issue without the assent of 'three-fifths' of said voters, and to that extent said act must fall."

Another decision by this court closely analogous to and involving the same legal question as the case at bar is that of Faulk et al. v. Board of Commissioners of Marshall County, 40 Okla. 705, 140 P. 777. In that case, as in the case at bar, two forms of ballots were provided for the voters participating in the election, one of which was used by the qualified property taxpaying voters and the other by the qualified nontaxpaying voters. Less than three-fifths of the qualified property taxpaying voters participating in said election voted for the issuance of said bonds as required by article 10, sec. 26, Const., and section 1 of art. 3, but the combined vote of the qualified property taxpaying voters and the qualified nontaxpaying voters amounted to more

than three-fifths of the total votes cast in said election. The question there presented and determined by the court was whether section 26, supra, had the effect merely of changing the number of votes required to authorize the issuance of the bonds, or whether it also changed the qualifications of the voters from that of property taxpaying voters to that of voters as defined in article 3, sec. 1 of the Constitution. This court in that case held that the qualifications of voters as prescribed in article 3, sec. 1, were the qualifications intended by the provisions of section 26, supra, that all persons having the qualifications of voters under the Constitution, whether they were property taxpaying voters or merely qualified voters, were entitled to vote in said election and entitled to have their votes counted so that if three-fifths of all of the votes cast at said election were in favor of the issuance of the bonds, the bonds were legally authorized. The court used this language:

"In the case at bar the sole question for us to determine and which we are determining on this point is (1) that it is not required nor authorized either by the Constitution or the statute that there must be 60 per cent of the qualified property taxpaying voters voting at such an election as a condition precedent to the valid issuance of the bonds referred to in the propositions submitted by the board of county commissioners of Marshall county."

Other decisions by this court having more or less application to the question here involved are: Coleman v. Frame, 26 Okla. 193, 109 P. 928; Dingman v. City of Sapulpa, 27 Okla. 116, 111 P. 319; In re Bonds of City of Guthrie, 35 Okla. 494, 130 P. 265; State ex rel. City of Shawnee v. Williamson, 186 Okla. 278, 97 P. 2d 74; Williams v. City of Norman, 85 Okla. 230, 205 P. 144; Jones v. School District No. 96 et al., 144 Okla. 10, 289 P. 268; State ex rel. R. J. Edwards, Inc., v. Keith, City Treas., 179 Okla. 563, 66 P. 2d 1059.

The opinion in the Faulk case, supra, quotes the contention of plaintiffs therein as follows:

"Our contention, therefore, is, that the statute, as is seen in section 1625 of the Revised Laws of 1910, should have read into it the provision of the Constitution requiring 'three-fifths' of the voters instead of a 'majority', but otherwise the statute is valid and should stand. And the Constitution and the statute read together would require 'three-fifths of the qualified property taxpaying voters' before the bonds could be issued or the indebtedness incurred."

The opinion then concludes with the following language:

" . . . We are not called upon to make a constitutional provision fit a statute, or so patch it as to make it subserve individual opinion, nor should we, by construction, mar the harmony of organic law or quibble over a statutory provision not in conflict therewith. The construction given the constitutional provisions of this state on this subject renders unnecessary a further consideration of the authorities cited by plaintiffs in error.

"In the construction of a courthouse all of the people, and especially all of the voters, are interested and the Constitution guarantees to the voter the right of a vote, and for this purpose, whether they be of the fortunate class who own property, or of the unfortunate class who do not own property, his vote in the ballot box . . . should be counted as cast."

Section 26, art. 10, supra, guarantees the right of all qualified electors to vote in such an election. The attempted restriction of this right to taxpaying electors by the statute is in this respect in conflict with said constitutional guaranty and void. The combination of the two classes of votes shows that the issuance of the bonds was authorized by more than three-fifths of the qualified voters participating in the election and the bonds should be approved.

Writ granted.