Vincent A. Massi, J.
The motions addressed to the three indictments present common issues and are therefore considered together. Each of the defendants is charged with obstruction of governmental administration, official misconduct, and with having criminally tampered with a particular bridge maintained by the City of New York so as to cause a substantial interruption and impairment of service. Except for the name of the defendant and the name of the bridge, the three count indictments are identical. They arose out of a strike by certain municipal employees on June 7, 1971. The defendants, employed by the city as bridge operators, went off their jobs, leaving the bridges in an open position so that traffic over the bridges was halted.
The first count of each indictment charges a violation of section 145.20 of the Penal Law, which reads as follows:
*50 ‘ ‘ A person is guilty of criminal tampering in the first degree when, with intent to cause a substantial interruption or impairment of a service rendered to the public, and having no right to do so nor any reasonable ground to believe that he has such right, he damages or tampers with property of a gas, electric, sewer, .steam or water-works corporation, telephone or telegraph corporation, common carrier, or public utility operated by a municipality, or district, and thereby causes such substantial interruption or impairment of service.
“ Criminal tampering in the first degree is a class D felony.”
The determinative issue, with respect to the first counts, is whether the bridges were public utilities operated by the city within the purview of the .statute. The term “ public utility ” is not defined in the Penal Law. It is, however, an elastic term which cannot be defined with such precision that one may readily determine whether a given facility falls within it or not.
In State ex rel. City of Pauls Valley v. Williamson (202 Okla. 338) a bridge and its approaches to afford a continuous route of travel over a creek were held not to be a public utility. Again in Hester v. Louisiana Tax Comm. (227 La. 1022) a bridge owned and maintained by Warren County, Mississippi, was held not to be a public utility for tax purposes. On the other hand, a bridge was found to be a public utility for rate-making purposes (Clarksburg-Columbus Short Route Bridge Co. v. Woodring, 89 F. 2d 788). In Woodmansee v. Kansas City (346 Mo. 919.) a city market was held not to be a public utility within the Public Service Law, but to be a public utility within the provisions of the City Charter authorizing the issuance of bonds on the credit of income from “ public utilities ” owned or operated by the city. A cemetery was said to fall within the ‘ ‘ public utilities ’ ’ which the city could purchase (Denton v. City of Sapulpa, 78 Okla. 178) and in City of Belton v. Ellis (254 S. W. 1023 [Texas]) a pool and slide were found to be a public utility within the provisions of a statute authorizing the city to own and operate a “public utility”.
Many cases can be cited showing the elasticity of the term, as well as the conflicting interpretations that have been placed upon it (see 35A Words and Phrases, pp. 85 to 118). The term has been held to include a public park (Derr v. City of Fairview, 121 Okla. 23), a golf course (Golf View Realty Co. v. City of Sioux City, 222 Iowa 433), a municipal parking lot (City of Shawnee v. Williamson, 338 P. 2d 355 [Okla.]), a library (Bekins v. City of Tulsa, 299 P. 2d 792 [Okla.]), and a museum (City of Tulsa v. Williamson, 276 P. 2d 209 [Okla.]).
*51 It has been held not to include streets and highways (Coleman v. Frame, 26 Okla. 193; Village of Blue Ash v. City of Cincinnati, 173 Ohio St. 345), garbage removal (Olsen v. City of New York, 177 Misc. 99), a school building (State ex rel. Grimes v. Board of Educ., 186 Okla. 665), a municipal auditorium (State ex rel. White v. City of Cleveland, 125 Ohio St. 230), parking meters (Board of Comrs. of City of Newark v. Local Govt. Bd. of N. J., 133 N. J. L. 513), and off-street parking facilities (Wayne Vil. President v. Wayne Vil. Clerk, 323 Mich. 592).
It is clear, therefore, that the meaning to be given the term 11 public utility ” depends on where it is found and the sense in which it is used. Where it appears as part of a statutory provision, it must be given its intended meaning as reflected by the statute. Especially is this so where, as here, we are dealing with a criminal statute, the violation of which would subject a violator to possible incarceration for a term of seven years.
A criminal statute must be unequivocal and must describe the offense with such clarity that all who read it would be made aware of the acts prohibited. The words used must be given their usual and ordinary meaning, and not construed so as to spell out a crime by implication. Unless otherwise clearly indicated, the words must be given a meaning which accords with common usage and understanding. A bridge does not come within the common conception of a public utility nor does the statute indicate that it is to be considered as such.
If the clause “public utility operated by a municipality” is considered without regard to the balance of the section, as urged by the District Attorney, it may be said to include practically anything maintained by a municipality for the use, benefit, enjoyment or convenience of the public, even though they are not remotely related to the generally accepted understanding of the term. However, that is not the sense in which the term “ public utility ” is used when consideration is given to the balance of the statute. A fair reading of the section leads to the conclusion, and the court so holds, that the term is used in a restricted sense and limited to services similar to those listed and specified as being owned by corporations, which immediately precedes the clause in question. Because of the nature of the term, any other interpretation would render the undefined provision vague and indefinite, and require speculation as to what might be considered to come within its meaning.
*52 In passing, it is interesting to note that the State Legislature is presently considering an amendment to section 145.20 of the Penal Law, so as to include tampering with “ a fire or police alarm system or communication system operated by a municipality” (Senate 2250-A).
The second count of the indictments charges each defendant with having obstructed and impaired governmental administration by the unlawful act of criminal tampering (Penal Law, § 195.05). The word “tamper” is defined as “to meddle especially so as to alter a thing by corruption or adulteration ” (Webster’s Universal Unabridged Dictionary). It is also defined in the Practice Commentaries to article 145 of the Penal Law as “interfering with or displacing property” (McKinney’s Cons. Laws of N. Y., Book 39, p. 386).
The second counts are fully supported by the evidence before the Grand Jury which establishes that the defendants left the bridges in an open position after rendering them inoperable by the removal of part of the electrical equipment. It also appears that two of the defendants had gone to the bridge for this very purpose.
The claim that defendants are being prosecuted for union activity is without substance. They have not been indicted for the exercise of their right to strike, but for the unlawful act of interfering with the proper functioning of the bridges by displacing part of its equipment. The Grand Jury minutes disclose that electrical equipment was removed from the three bridges and that defendants had participated therein.
The third count of the indictments (official misconduct) is in the language of the statute (Penal Law, § 195.00) and does not specify the conduct underlying the charge or reveal any facts supporting it. These counts are legally insufficient. They do not comply with CPL 200.50 which requires each count to contain a, plain and concise factual statement clearly apprising defendants of the conduct which is the subject of the accusation. This defect may not be corrected by amendment (CPL 200.70) nor may the deficiencies be supplied by a bill of particulars (People v. Bogdanoff, 254 N. Y. 16, 29). The remedy is by way of resubmission (CPL 200.80).
For the reasons stated, the motions are granted to the extent of dismissing the first and third count of each indictment and otherwise denied.