## FAIRLAWN CEMETERY ASS'N v. STREET et al.

No. 4671. Opinion Filed July 13, 1915.

Rehearing Denied December 21, 1915.

(153 Pac. 673.)

1. **CEMETERIES—Affairs of Association—Right to Conduct for Profit.** It is the declared policy of the law in this jurisdiction that the affairs of a cemetery association shall not be conducted for the purpose of profit to the corporation or its members.

2. **SPECIFIC PERFORMANCE—Void Contract—Public Policy.** The courts of this state will not lend their aid to the enforcement of contracts violative of its statutes or established public policy.

(Syllabus by Bleakmore, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by Joseph G. Street and another against the Fairlawn Cemetery Association. Judgment for plaintiffs, and defendant brings error. Reversed, with directions to dismiss with prejudice.

*James R. Lewis* and *Everest & Campbell,* for plaintiff in error.

*Keaton, Wells & Johnston,* for defendants in error.

Opinion by BLEAKMORE, C. This is an action for accounting and specific performance, commenced in the district court of Oklahoma county on the 27th day of January, 1912, by the defendants in error, as plaintiffs, against the plaintiff in error, as defendant. The parties will be referred to as they appeared in the trial court.

By the petition it is alleged, in substance, that on March 31, 1904, plaintiff Joseph G. Street, the owner of a certain tract of land embracing 46 acres (12.9 acres of which lay immediately east, and the remainder south, of the Fairlawn cemetery), conveyed the same by warranty deed to the defendant, Fairlawn Cemetery Association, the consideration for such conveyance being the payment to him of one-half of the proceeds arising from the sale of cemetery lots therein, as expressed in a contemporaneous written contract between the parties, made a part of the same transaction, by the terms of which it was provided that defendant should render an account of all such sales at least once every three months; that it was agreed in said contract that, if defendant should at any time make default in accounting and paying to the said Joseph G. Street such share of the money realized

from the sale of said lots, he might either declare the contract at an end, and require a reconveyance of said land to any cemetery association he might organize, or proceed to foreclose the contract and charge the entire tract remaining unsold with one-half of the appraised value thereof as and for the purchase price and in consideration of the making of said deed; that plaintiff Street had sold and transferred an undivided half interest in said contract and all rights thereunder to his coplaintiff, A. J. Kirkpatrick; that, pursuant to the contract, the 12.9 acres lying east of the cemetery was platted for cemetery purposes, and certain lots sold therefrom; that on August 1, 1907, defendant reconveyed to plaintiff Street that part of said land lying south of the cemetery; that defendant, in accordance with said contract, accounted to plaintiffs for their share of the proceeds from the sale of the cemetery lots sold up to about October 15, 1911, after which time, although a number of said lots were sold, and various sums of money received therefor, defendant failed and refused to account for the proceeds, and notified plaintiffs that it would make no further payments, unless compelled so to do by order of court. There is prayer for specific performance of the contract, in that defendant be required to render a statement every three months of all sales of lots included within the 12.9-acre tract and pay one-half thereof to plaintiffs.

It is not deemed necessary to advert to the contents of the answer or reply. The following is a summary of only those facts disclosed by the evidence necessary, in our opinion, to a determination of the cause:

For a number of years prior to April 25, 1903, defendant had been organized and existing as a cemetery

association under the laws of the Territory of Oklahoma, and owned certain lands dedicated to cemetery purposes. The 12.9-acre tract above referred to lying immediately on the east of the cemetery was desired to enlarge its grounds, and considered necessary to meet the contemplated needs of the association. At that time the directorate of the association was composed of three members, A. J. Kirkpatrick, one of the plaintiffs herein, president, J. M. Owen, secretary, and S. C. Heyman. There was also a superintendent, A. B. Hammer, and a sexton, Bert Drake. On said day the two directors, Kirkpatrick and Heyman, and Hammer and Drake, the superintendent and sexton, purchased the 46 acres, comprising the 12.9-acre tract just east and the 33.1-acre tract immediately south of the cemetery; the title being taken in the name of Heyman. Whether it was their purpose to devote any part of it to the use of the cemetery is not clear. However, the portion lying south of the cemetery was soon thereafter platted as an addition to Oklahoma City, but no steps were taken looking to the disposition of the 12.9-acre tract.

In January, 1904, plaintiff J. G. Street purchased from Heyman and Hammer their undivided interest in the 46 acres, paying therefor $4,600, and taking a deed to the whole. Some time thereafter plaintiff Kirkpatrick purchased the interest of the sexton, Drake, and thereby became the owner of an undivided one-half interest in the entire tract; and this was the condition of the title on March 31, 1904, when plaintiff Street had the transactions with the cemetery association set forth in the petition, the plaintiffs each owning an undivided one-half interest in the property, the record title being in Street. Kirkpatrick, Owen, and Heyman then composed

the board of directors of defendant association. Kirkpatrick owned a one-half interest in the property, Street holding the title in trust for him, which fact was probably known to the other two directors. In any event, this board of directors accepted a deed for the entire 46 acres from Street, and entered into a contract by which it was agreed to pay him one-half of the proceeds derived from the sale of the lots therein. The contract provided:

That the 12.9-acre tract should be immediately platted for cemetery purposes (which was done), and "that the cemetery lots contained in said tract and all tracts hereafter surveyed shall, before sold, be appraised by the party of the second part, and the appraisement submitted to the party of the first part for his approval, and when approved by him shall be sold by the party of the second part at not less than such appraised value, and out of the proceeds of such sales one-half of the same shall be paid to the party of the first part as and for the purchase price of the property conveyed in said mortgage deed: Provided, further, that no appraisement shall be placed on any play [plat] or subdivision of said cemetery grounds below an average price of $20.00 per lot for all lots platted."

This contract was signed and acknowledged by plaintiff Street in his individual capacity and by the plaintiff Kirkpatrick for and as president of the cemetery association.

In January, 1905, about one year after the making of said deed and contract, plaintiff Street became the secretary and one of the then three directors of the defendant association, and he and his coplaintiff, the president, constituted a majority of its board until about July, 1909, when the directorate was increased to five members. Both of the plaintiffs continued as directors until about

July, 1911. Some time in the year 1907, plaintiff Street executed to his coplaintiff, Kirkpatrick, a deed conveying or evidencing his interest in the property in question.

On August 1, 1907, the defendant association reconveyed to plaintiff Street all that portion of the land conveyed to it by his deed of March 31, 1914, exclusive of the 12.9 acres embraced in the cemetery, pursuant to the following resolution:

"It appearing that an injunction suit is pending against the Fairlawn Cemetery Association prohibiting them from the use of the part of the lands purchased from J. G. Street, and more particularly described in the conveyance and contract made between said J. G. Street and the Fairlawn Cemetery Association as a cemetery.

"For the purpose, therefore, of adjusting said difference between the association and the said J. G. Street, it was resolved that a reconveyance of all that part of said land purchased, conveyed by the Pleasant View addition to Oklahoma City, be made to the said J. G. Street, and that he be released from the obligation and covenants contained in said deed and contract, and that said reconveyance shall operate as a cancellation of the deed heretofore referred to and the contract accompanying same, and the president and secretary are hereby authorized to make said reconveyance as required by law."

The 12.9-acre tract was platted into 1,079 lots, certain of which were donated to special uses, leaving 1,061 to be sold. Practically one-half of these were appraised; the highest price fixed upon any lot by the original appraisement being $50. Reappraisements were had, with the approval of the plaintiffs, by the last of which the lot values ranged from $250 for the highest to $100 for the lowest; and 133½ of such lots were sold. As their moiety of the proceeds, and from the sale of a small

portion of said tract as right of way for a street railway, plaintiffs received $12,442.50. The market value of the entire 46 acres at the time of its acquisition by the plaintiffs, in 1904, was about $200 per acre. All but the 12.9 acres actually devoted to cemetery purposes was reconveyed to them in 1907, without consideration, thus leaving the amount of their investment in the cemetery property approximately $2,600.

There was judgment for plaintiffs, the court finding that the contract should be enforced, and that they were entitled to receive one-half of the proceeds from the sale of the lots included within the 12.9-acre tract, and that after a full accounting there was due and payable to them up to the time of the trial the sum of $626.79.

The fourth assignment of error in the brief is that:

"The trial court erred in refusing to hold that the contract of March 31, 1904, between J. G. Street, one of the defendants in error, and the plaintiffs, was void because the same was unconscionable and unlawful, contrary to public policy, in violation of good morals, and against the laws of the State of Oklahoma."

In support of this assignment defendant urges, among other things, that in the transactions involved plaintiffs, stockholders and officers acting for the corporation, dealt with themselves as individuals, to their personal advantage, and to the detriment of the association, and that the contract sought to be enforced and the acts of the parties thereunder are in direct contravention of the statute and against public policy. On the other hand, plaintiffs contend that the contract sued on and their entire course of dealing with the association was lawful, open, fair, and productive of good results to the defendant, as well as themselves.

At the time of the execution of the deed and contract of March 31, 1904, plaintiff Street was not a member or officer of the defendant association, but his coplaintiff, Kirkpatrick, for whom he held in trust the legal title to one-half the property involved, and whose beneficial interest in the contract was equal to his own, was then its president; and, if in such transactions Kirkpatrick was acting in a double or antagonistic capacity, so as to affect the validity thereof, Street was equally chargeable and responsible.

In regard to the duty and good faith required of directors in dealing with corporations, it is said in Thompson on Corporations (2d Ed.) sec. 1220:

"Directors, in dealing with the corporation, must not only give to the corporation the benefit of their best care and judgment, but they must exercise the highest and most scrupulous good faith, and self-interest must be sacrificed for the corporate good. Anything less than this is disloyalty to the corporation. * * *

"Any contract, engagement, or undertaking by a director or other officer of a corporation, by which he agrees to do a thing which is or may become injurious to the stockholders, is contrary to the duty involved in his trust and is voidable."

It is also said by the same author (section 1246):

"Courts hold the directors of a corporation to the strictest accountability. Conduct inconsistent with any duty is condemned. The fiduciary relation is so vital that directors are not only prohibited from making profit out of corporate contract, and from dealing with the corporation except upon the most open and on the fairest terms, but the rule of accountability is so strict that they are not permitted to anticipate the corporation in the acquisition of property reasonably necessary for carrying

out the corporate purposes or conducting the corporate business."

While the defendant association is a private corporation, yet the purposes for which its incorporation was authorized and the uses to which its property is dedicated by the law are largely public. These public characteristics of a cemetery association are recognized in every legislative enactment with reference thereto. Such an association has power to take and hold real property "for the sole use and purpose of a burial ground." All its property and that of the individual lot owners in its cemetery is exempt from taxation, assessment, lien, attachment, levy and sale by execution, appropriation for streets and roads, etc., and, when its lots are acquired by individuals and the dead buried therein, they are forever inalienable. The association is impowered to make by-laws "to the end that all the appliances and conveniences and benefits of a public and private cemetery may be obtained and secured."

Section 387, Rev. Laws 1910, in force in the Territory and State of Oklahoma since 1890, provides:

"The proceeds arising from the sale of lots, after deducting all expenses of purchasing, inclosing, laying out and improving the ground, and of erecting buildings, shall be exclusively applied, appropriated and used in protecting, preserving, improving and embellishing the cemetery and its appurtenances, and to paying the necessary expenses of the corporation, and must not be appropriated to any purpose of profit to the corporation or its members."

Under the contract in question, by virtue of successive appraisements made while plaintiffs constituted a majority of the board of directors of the defendant as-

sociation, the price of cemetery lots included within the 12.9-acre tract was increased at least five-fold; and from the proceeds paid to them from the sales of such lots plaintiffs profited to the extent of nearly $10,000. If this contract, under the specific terms of which the cemetery association is powerless to sell lots within the 12.9-acre tract, save at prices fixed by appraisement approved by plaintiffs, be enforced, and if the increase following the series of appraisements of such lots in the past is any criterion to future action in this regard, the prices which may be exacted of purchasers hereafter will depend entirely upon the avarice of the plaintiffs and financial ability of those who must bury their dead in this part of the cemetery. All who by necessity are required to purchase lots in a cemetery by virtue of the law become members of the association. Incentive to their exploitation for private gain is denounced by the statute, and its existence in contracts controlling the actions of the corporation will not be tolerated by the courts.

It is now and has been at all times the declared policy of the law in this jurisdiction that the affairs of a cemetery association shall not be conducted for the purpose of profit to the corporation or its members. Conceding the fact to be that the association in the instant case was at the time without means to purchase this land, which was regarded as necessary to its purposes, and that the contract entered into with plaintiffs afforded a way of accomplishing the purpose to enlarge its grounds, and apparently provided future benefits without present expenditures, yet the entire transaction was contrary to the plain provision of the statute.

In whatever light this contract may be viewed, it provided profit for a member of the association. By its terms a 12.9-acre tract of land costing $200 an acre was immediately platted into 1,060 lots, to be sold not "below an average price of $20.00 per lot for all lots platted," and one-half of the proceeds thereof paid to the president of the corporation and his associates; thus at the time clearly contemplating an ultimate profit to them of at least $8,000.

Suffice it to say without further comment that this court will decline to lend its aid to the enforcement of any contract violative of a statute or the established public policy of the state.

The judgment should therefore be reversed, with directions to dismiss the action with prejudice.

By the Court: It is so ordered.