## CLAUS et al. v. HARDEN et al.

No. 28331. Feb. 14, 1939.

Rehearing Denied June 20, 1939.

Application for Leave to File Second Petition for Rehearing Denied Sept. 12, 1939.

Pratt, Honnold & Swindell and Rollin E. Gish, for plaintiff in error.

Monnet & Savage and Settle & Clammer, for defendants in error.

DAVISON, J. The cases here considered were filed separately, but were consolidated in the district court and appealed to this court as a single cause. Each of the two actions was commenced by the owners of cemetery lots in Rose Hill Burial Park, John J. Harden was made the principal defendant in both suits and in one of them he was sued both as an individual and as trustee of Rose Hill Burial Park.

The trial court sustained general demurrers to the pleadings of the plaintiffs in both actions and from said orders sustaining the demurrers, this appeal is brought.

From an examination of the pleadings, it appears that prior to 1917, John J. Harden, being then the owner of the land upon which Rose Hill Burial Park is now located, platted and dedicated said land for cemetery purposes, and the essence of the plaintiffs' alleged cause of action is that he has not fulfilled his obligations with reference to the "perpetual care fund" for said cemetery. They allege that he has not only failed to comply with the provisions of section 1, chapter 106, S. L. 1917 (sec. 9372, O. S. 1931), but they also charge that he has failed to perform his covenants with reference to the care and maintenance of said Rose Hill Burial Park.

In considering the first of the charges upon whch the plaintiffs' alleged cause of action is based, it is necessary to notice the provisions of the statute in question. Section 9372, supra, reads as follows:

"In all cemeteries of this state where lots are sold or charges made for interments, not less than 25 per cent. of all moneys received from the sale of lots and interments shall be segregated and set aside as a permanent fund to be known as 'the Perpetual Care Fund,' such fund to be invested as hereinafter provided and the interest only to be used in improving, caring for, and embellishing the lots, walks, drives, parks and other necessary improvements on such cemeteries."

The defendant contends that the above section applies only to municipally-owned cemeteries. It is conceded that the defendant has never conveyed the title to the cemetery as a whole to any one else, and that it is still privately owned, but the plaintiffs' action is based upon the theory that the cemetery in question is included within the plain wording of the statute, to wit: "In **all** cemeteries of this state.***"

The argument on behalf of the defendant is that the act itself shows that it was not the intention of the Legislature to enact such a provision with reference to "all" cemeteries of the state, but it was intended to apply such regulation to only those that are owned by cities and towns. In support of this theory, we are referred to the title of the original act, its heading in the Revised Laws of 1910, and to other provisions of said act.

Section 9372, supra, is an amendment to section 404, R. L. 1910, which is identically the same as article 1, chapter 6, S. L. 1909. The remaining provisions of the original act of 1909 appear along with section 9372, supra, in chapter 42, article 2, O. S. 1931. The title of the original act of 1909 was the following:

"An act providing for the ownership of cemeteries by cities and towns and providing for the management, control and regulation thereof; and declaring an emergency."

After this act was incorporated in and adopted as a part of the Revised Code, it appeared in the Revised Laws of 1910 under the article on "municipal cemeteries."

The plaintiffs assert that where there is nothing ambiguous in the body of a legislative enactment, the rule of construction allowing a consideration of its title to determine the purpose of the act does not apply, for in such a case there is no room for construction and the plain wording of the statute cannot be modified or changed by the courts. Some doubt has been expressed as to whether the ambiguity which will admit of judicial interpretation is confined to the body of the act or whether it may consist of a conflict between the title and the body. See Annotation 37 A. L. R. 927, 947, note 10, and 949. It is well settled, however, that when a consideration

of all of the provisions of an act raises a doubt as to the meaning of the language used in one or more of said provisions, then the courts may interpret said language in conformity with the apparent intention of the Legislature in adopting it.

It appears from an examination of section 9372, O. S. 1931 (section 404, R. L. 1910, as amended by section 1, chapter 106, S. L. 1917), that it is not an entire act, complete within itself, but was passed as one provision, only, of a plan for the care and maintenance of cemeteries. In following the legislative direction therein contained, the very language of the provision itself compels a consideration of other provisions of the legislative design. To grasp the entire mandate contained in that section with reference to the "perpetual care fund," we are directed to other sections of the article by the words: "* * * such fund to be invested as hereinafter provided. * * *" When we look to the sections which follow section 9372, supra, to ascertain how the fund shall be invested, we find that it is to be invested by the "trustee" of the fund. When we look to see how that trustee shall be selected, we find that section 9374 provides the following:

"Any city or town owning a cemetery, or twenty-five of the lot owners in such cemetery may petition the district court of the county where the cemetery is situated for the appointment of a trustee who shall be known as the trustee of the 'perpetual care fund,' whose duty it shall be to receive the perpetual care funds as provided for in this article and such other funds as may be donated, deposited or bequeathed to such cemetery or any part thereof, as a 'perpetual care fund' and to invest, manage and control such fund under the direction of the judge of the district court."

There can be no question that the expression "such cemetery" in the second line of the above-quoted section relates back to the first line of said section and refers to a cemetery owned by a city or town. Consequently, when section 9372, supra, is read in connection with this section, the statute, if given its literal meaning, would provide that the perpetual care fund of every cemetery of this state is to be invested by a trustee appointed upon the petition of any city or town owning a cemetery or 25 of the lot owners of such (municipally-owned) cemetery. This interpretation gives the section such an absurd aspect that it raises serious question as to whether the Legislature intended it to apply to "all cemeteries of this state" or merely to all municipally-owned cemeteries of the state. In view of the doubt thus cast upon the meaning of section 9372, supra, when considered with the supplementary provisions of the act of which it is only one dependent part, resort may be had to the title of the act to ascertain the intention of the Legislature with reference to its use of the words "all cemeteries of the state" in said section. The title refers only to cemeteries owned by cities and towns, so we must reject the literal interpretation urged by the plaintiffs for the words in question and hold that section 9372, supra, refers only to "all" (such) "cemeteries of this state * * *" and that no regulation was thereby intended for privately-owned cemeteries such as the one involved here. In support of their contention, the plaintiffs have also called our attention to section 9382, O. S. 1931 (sec. 414, R. L. 1910; sec. 15, art. 1, chap. 6, S. L. 1909), which begins with the following words: "Any burial lot in any cemetery owned by any city or town, or by an association incorporated for cemetery purposes. * * *" If the last phrase of the quotation refers to cemetery ownership rather than to lot ownership by an association (as mentioned in section 9367, O. S. 1931), it might be said to refer to a class of cemeteries not specifically mentioned in the title of the act and thus be persuasive against allowing the title to control the construction of the individual provisions contained therein, yet, as can readily be seen, it would be no argument in support of the contention that either the act as a whole or the specific section in question applies to cemetery owned by an individual. A mere reading of section 9382, supra, is sufficient to disclose that it contains no reference to the perpetual care fund, or the sections dealing therewith. In fact, specific mention in the act of a class of cemeteries other than those owned by cities or towns might be taken as evidence that wherever it was intended by the provisions of said act to affect cemeteries other than those owned by cities or towns, the additional class was specifically named, and as section 9382, supra, or section 15 of said act, is the first place in the entire act that any specific mention is made of cemeteries outside the class theretofore dealt with therein, that it was the first section of said act that was intended to apply to any additional class (such as those owned by an association incorporated for cemetery purposes). In view of the foregoing considerations, we see no basis of fact, logic, or statutory con-

struction for fabricating out of section 9382, supra, a modification of the interpretation we have placed upon section 9372, supra.

Aside from the operation of the statute, the plaintiffs' alleged cause of action seems to be based also upon the theory that it is the defendant's duty to set aside for the care and maintenance of Rose Hill Burial Park a portion of certain funds derived from the sale of certain lots of the cemetery for which no deeds have been issued and the sale of crypts in the Rose Hill Mausoleum. It is alleged, in substance, that since the plaintiffs purchased their lots, the defendant has sold other lots by contract and has received large sums of money upon the purchase price of said lots and that he has failed to set aside for the Rose Hill perpetual care fund any portion of the money thus received. It is also alleged that the defendant dedicated an unsold portion of the cemetery for a mausoleum site, arbitrarily evaluated the site at $25,000, paid into the Rose Hill Burial Park perpetual care fund only 10 per cent. of that amount and then built the Rose Hill Mausoleum, and since its completion had been selling interment space or crypts therein without applying any part of the funds derived from said sales to said perpetual care fund.

In the briefs of the plaintiffs, the defendant's failure to pay into the Rose Hill perpetual care fund any portion of the moneys he has received from the sale of lots by contract and the sale of crypts in the mausoleum is said to be an attempt to avoid his contract obligations with reference to said fund. We fail to perceive in such conduct, however, an avoidance or violation of any contractual obligation, with which the defendant is shown to be charged. The only contract obligations that the defendant is alleged to have assumed with respect to the perpetual care fund are said to arise from a covenant contained in the deeds to the lots which the defendant delivered to the plaintiffs and other lot owners and from a certain provision of the exhibit attached to the declaration of trust which named certain trustees for the Rose Hill Burial Park perpetual care fund. The covenant contained in the deeds is alleged to read as follows:

"Said grantor hereby covenants and agrees with the said grantee to set aside 10% of the consideration of this deed forever in trust; and the said grantor shall forever hereafter from the income of said sum and from the income of other funds granted from a definite part of the proceeds of lot sales, from time to time, apply the income from said amounts, for the perpetual care and maintenance of said Rose Hill Burial Park."

The exhibit attached to the declaration of trust is represented to contain the following language:

"Now, therefore, the said John J. Harden for and in consideration of the trustees heretofore named, acting in said capacity, agrees and does transfer, assign and set over to the trustees above named, for the uses and purposes in said Declaration of Trust, containing ten per cent. of the total amount received for lots sold by deed, up to July 1, 1919, and further agrees upon the request of said trustees to assign, transfer and set over to said trustees any and all sums derived from the sale of lots by deed in said cemetery, containing the provisions heretofore set forth."

The plaintiffs do not charge that the trustees of the fund have made a request of the defendant, Harden, such as the above provision allows, nor is it charged that the defendant has failed to set aside for the Rose Hill perpetual care fund 10 per cent. of the consideration paid for every lot conveyed by deed containing a covenant requiring that to be done or even that he has failed to set aside 10 per cent. of the proceeds of all "lots sold by deed, up to July 1, 1919," but they merely complain of his failure to set aside for the perpetual care fund any portion of the moneys he has received on the purchase price of lots sold since that date, for which no deeds have been delivered. We see nothing in either of the above-quoted portions of the instruments alleged to have been executed by the defendant that would bind him to do this, or to set aside for the care fund any portion of the funds he may have received from the sale of crypts in the mausoleum. The plaintiffs assert that in using a part of the cemetery grounds for the mausoleum, the defendant has attempted to avoid his prior dedication as applied to a part of the cemetery. A copy of the dedication and certificate to the plat of Rose Hill Burial Park, omitting the formal parts, reads as follows:

"That John J. Harden of Brownsville, state of Texas, the owner of the following described real estate in Tulsa county, state of Oklahoma, described as follows, to wit: (description) hereby certifies that he has caused the same to be surveyed into blocks, lots, streets, driveways, walkways, avenues, alleys and parks in conformity to the annexed plat, which he hereby adopts as the plat of the above described land under the name of the Rose Hill Burial Park, and

does hereby dedicate, subject to the conditions and restrictions hereinbefore named, all of the streets, driveways, walks, avenues, alleys and parks shown upon said plat to the public use and to the use and benefit of those persons who may hereafter procure by purchase, or otherwise, title to burial lots included in and shown upon said plat. Said property as shown by said plat being hereby set apart by the grantor hereinbefore named, to be used exclusively for cemetery purposes."

It is not contended that the site of the mausoleum occupies any part of the grounds dedicated by the above instrument for public use as streets, driveways, walks, etc. We see no merit to the plaintiffs' contention with reference to said mausoleum.

It is next contended that the operation of Rose Hill Burial Park is subject to governmental regulation because it is a cemetery and that such a business is a matter of public concern. We are referred to Denton v. City of Sapulpa, 78 Okla. 178, 189 P. 532, in which the following words were quoted from the opinion of the Connecticut Supreme Court, in Evergreen Cemetery v. City of New Haven, 43 Conn. 234:

"The use of land for a burying ground is a public use, and for such a purpose it may be taken, if need be, under the right of eminent domain."

An examination of the rest of our opinion in the above case, as well as the Connecticut opinion quoted, is sufficient to demonstrate that the quoted words were used in connection with the use of land for a public cemetery. Rose Hill Burial Park is no more than a private cemetery owned by the defendant, as an individual. This is the fundamental reason that our decision in the above case is in no way applicable to the present case, and is also the reason that section 9353, O. S. 1931, is inapplicable. Said section reads as follows:

"The proceeds arising from the sale of lots, after deducting all expenses of purchasing, enclosing, laying out and improving the grounds, and of erecting buildings, shall be exclusively applied, appropriated and used in protecting, preserving, improving and embellishing the cemetery and its appurtenances, and to paying the necessary expenses of the corporation and must not be appropriated to any purpose of profit to the corporation or its members."

It is obvious that the above statute applies only to cemetery corporations and does not apply to or forbid the operation of a cemetery by an individual for profit.

In accordance with the views herein expressed, we find no merit in any of the theories upon which the plaintiffs rely to support their claim that their pleadings state a cause of action. The judgment of the trial court is therefore affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and CORN, JJ., concur.