## NEW YORK CASUALTY CO. v. DAY, Adm'x.

No. 28819.   Oct. 24, 1939.

Chandler, Shelton & Fowler and John W. Swinford, of Oklahoma City, and H. R. Williams, of Tulsa, for plaintiff in error.

Bailey E. Bell and Robert B. Thomas, both of Tulsa, for defendant in error.

RILEY, J.   This is an appeal from a judgment in favor of defendant in error, hereinafter referred to as plaintiff, in an action against plaintiff in error, hereinafter referred to as defendant, to recover on a supersedeas bond in a case wherein Vernon M. Day was plaintiff and C. W. Beck and Memorial Park were defendants. In that case Day commenced an action in replevin in the court of common pleas of Tulsa county against C. W. Beck and Memorial Park, a business trust, to recover possession of a certificate for 20 shares of stock of said business trust, or its value alleged to be $2,000.

Judgment in that case was for plaintiff for the possession of 20 shares of stock in Memorial Park, a trust estate, or for $2,000, in lieu thereof in case delivery could not be had.

Defendants in that action appealed to this court and gave a supersedeas bond in the sum of $4,000 with New York Casualty Company as surety. Pending the appeal Vernon M. Day died, and the cause was revived in the name of Mrs. Rosetta Day, administratrix of his estate.

On appeal to this court the judgment was affirmed. Beck et al. v. Day, 178 Okla. 310, 62 P.2d 1014.

Thereafter this action was commenced against the casualty company, surety on said supersedeas bond.

The cause was tried to the court without a jury, resulting in the judgment from which this appeal is taken. The sole question is the right of plaintiff to recover in such circumstances.

It appears from the record that Memorial Park was created as a business trust about April, 1927. C. W. Beck was sole trustee.

The original declaration of trust, whereby the trust estate was created, among other things, provided:

"Second: This trust estate is created for the purposes of establishing, developing and improving a cemetery in Tulsa county, Oklahoma, and elsewhere, and for the purpose of selling lots, blocks and parcels of land therein for burial purposes or for the erection of mausoleums thereon, or for any other lawful purpose."

And:

"Third: In pursuance, and not in limitation, of the general purposes of this Trust Estate, the trustee shall be authorized and permitted, in trust, however, to (a) convert the assets of the trust estate into money and to distribute the net proceeds thereof ratably among the persons holding and owning the beneficial interests issued by the trustee hereunder; it being, however, expressly understood and agreed that the trustee may, in his uncontrolled discretion, defer or postpone such conversion or distribution, except that the same shall not be postponed beyond the end of twenty-one years from the date hereof. During such postponement and until such conversion, the interests of the cestui que trusts shall be considered for the purpose of transmission

and otherwise, as personal property; (b) pending final conversion and distribution of the assets of the trust, to hold, manage, use, maintain, work, develop, mortgage, pledge, exchange or otherwise dispose of the same; (c) to subdivide any of its real property into lots, blocks, or parcels, for residence, business, cemetery, park, or other purposes, and to improve the same with fences, buildings, roads, walks, sewers and other improvements; (d) to enter into, make, perform, and carry out contracts of every sort whatsoever, and with any person, firm or corporation relating to development of the property and assets of the trust, or directly or indirectly incident to the general purposes of the trust."

It also appears that after the judgment was entered in the replevin action and pending the appeal, the trust estate was reorganized in a proceeding in the district court of Tulsa county, whereby the declaration of trust was amended, particularly as to section 3, so as to provide:

"The plan under which said Trust Estate shall operate shall be that of a nonprofit organization, and for that purpose said Trust Estate shall have no capitol (sic) stock, and all funds and monies, properties and interests acquired by said Trust Estate from any source shall be held and used solely for the purpose of developing, maintaining, preserving, embellishing, and adorning the cemetery known as 'Memorial Park,' and to create a Perpetual Care Fund for the future care, management and general supervision thereof, subject to the limitations hereinafter prescribed."

Section 4 was amended so as to provide:

"In pursuance, and not in limitation, of the general purposes of this Trust Estate the trustees thereof, in trust, however, shall be authorized and empowered to

"(a) Purchase or take by gift, grant or devise and to hold real property for the sole use and purpose of a burial ground, and to lay out the same into blocks and lots with convenient avenues and walks, and to sell the lots for the sole use and purpose of burying the dead; and they may own and hold such other real and personal property as the legitimate, necessary or proper purposes of the trust estate may require, and all income therefrom shall be applied as hereinafter provided for the payment of the debts of the Trust Estate, and the improvements and ornamentation of its burial grounds and for investment.

"(b) Enclose, improve and embellish its grounds, avenues and walks, and to erect buildings or vaults for its use and to prescribe in its by-laws rules for the sale, enclosure and ornamentation of lots, and for erecting monuments or grave stones thereon; and to prohibit any use, division, embellishment or ornamentation of any lot which they may deem improper; and to make other by-laws and acts to the end that all the appliances and conveniences and benefits of a public and private cemetery may be obtained and secured.

"(c) The proceeds arising from the sale of lots, after deducting all sales expenses, shall be exclusively applied, appropriated and used in protecting, preserving, improving and embellishing the cemetery and its appurtenances, and paying the necessary expenses of the Trust Estate, and must not be appropriated to any purpose for profit.

"(d) At least fifty (50) per cent. of the net proceeds of sale of blocks, lots or graves shall be applied as often as every three (3) months to the payment of the debts and obligations of such Trust Estate as long as such debts and obligations exist."

The principal contention now made by defendant is that the creation of Memorial Park originally on a profit-sharing basis was contrary to law and against public policy, and, therefore, the judgment in the replevin action, though affirmed by this court, is void and not binding in this case because it is based upon an illegal contract, and the court did not have judicial power to render a judgment validating said contract.

This contention is based upon the well-established rule that courts will not enforce any claim arising directly out of an illegal contract.

Defendant contends that the creation of the trust estate in the first instance was, in effect, illegal and void as being contrary to public policy as reflected by certain statutory provisions relating to cemeteries. Defendant relies upon the provisions of article 1, ch. 42, O. S. 1931, sections 9346-9363, inclusive, particularly section 9353, O. S. 1931. Section 9346 provides:

"Every cemetery corporation formed under the laws of the territory or state of Oklahoma shall be governed under the laws of the state of Oklahoma, and have such power conferred upon it and be subject to such duties as may be provided by the laws of the state."

Section 9348 grants to cemetery corporations power to acquire by purchase, gift, grant, or devise, real property not exceeding 80 acres for the sole use and purpose of a burial ground, and the power to own and

hold such other real and personal property as the legitimate, necessary, and proper purposes of the corporation may require, with the further provision that the income derived from such property shall be applied to the payment of the debts of the corporation and the improvement and ornamentation of its burial ground and investment, as provided in subsequent sections of the article.

Section 9353 provides:

"The proceeds arising from the sale of lots, after deducting all expenses of purchasing, enclosing, laying out and improving the grounds, and of erecting buildings, shall be exclusively applied, appropriated and used in protecting, preserving, improving and embellishing the cemetery and its appurtenances, and to paying the necessary expenses of the corporation and must not be appropriated to any purpose of profit to the corporation or its members."

In Fairlawn Cemetery Ass'n v. Street, 54 Okla. 136, 153 P. 637, it is held:

"It is the declared policy of the law in this jurisdiction that the affairs of a cemetery association shall not be conducted for the purpose of profit to the corporation or its members."

In that case the Fairlawn Cemetery Association was a private corporation, subject to and governed by the statutory provisions of article 1, ch. 8, R. L. 1910, article 1, ch. 42, C. O. S. 1921, title 8, ch. 1, Okla. Stat. Anno.

Fairlawn Cemetery Ass'n v. Street, supra, in effect holds that the affairs of a cemetery corporation organized under the laws of the territory or state of Oklahoma cannot be conducted for the purpose of profit to the corporation or its members, and that the courts will not lend their aid to the enforcement of a contract having for its plain purpose such profit.

Here we are dealing with a different kind of an organization. At the time Fairlawn Cemetery Ass'n v. Street, supra, was decided (1915) we had no statute specifically authorizing the creation of what is commonly termed "business trusts."

Section 1, ch. 16, S. L. 1919, section 11820, O. S. 1931, 60 Okla. Stat. Anno. § 171, provides for the creation of such trusts.

It may be noted that it provides that such a trust may have power to receive title to, hold, buy, sell, exchange, transfer, and convey real and personal property, etc.,

and carry on and conduct any lawful business designated in the instrument of trust, and, generally, do any lawful act in relation to such trust property which any individual owning the same absolutely might do. This broad and sweeping language in effect empowers such a trust to engage in business the same as an individual.

We have lately held in Claus et al. v. Harden et al., 185 Okla. 417, 93 P.2d 531, that:

"An individual's use of his own lands for a cemetery is not a 'public use,' so as to be subject to governmental control."

"Statute dealing with appropriation of net proceeds from sale of lots in cemeteries, and providing that proceeds must not be appropriated to any purpose of profit to corporation or its members, applies only to cemetery corporations, and does not apply to or forbid operation of cemetery by an individual for profit."

If an individual's use of his own land as a cemetery is not a public use and he is not subject to the provisions of section 9353, supra, it necessarily follows that the same use of land owned by a business trust, authorized by law to own, buy, and sell land and do any lawful act in relation thereto which any individual owning the land absolutely might do, would not subject such trust estate to the provisions of said section.

What we have said makes it unnecessary to discuss other questions presented by plaintiff in error, since its whole contention is based upon the alleged violation of section 9353, supra.

There is some contention made that after the judgment in the replevin action was affirmed tender was made to plaintiff of 20 shares of stock in Memorial Park. But, as stated, the trust had been reorganized in the meantime, and by amendment of the declaration of trust, the trust estate had been changed from a profit basis to a non-profit basis, the shares of stock tendered were clearly not the same stock in the same kind of trust estate or of the value fixed. See Gerber et al. v. Wehner, 96 Okla. 48, 220 P. 648, wherein it was held:

"A tender of identical property in substantially as good condition, but which is of less value by reason of decrease in market price, does not avoid the penalties of the bond." Caldwell v. Stiles et al., 80 Okla. 106, 194 P. 226.

Plaintiff was, in such circumstances, not

bound to accept the stock tendered and was entitled to recover on the supersedeas bond the amount fixed by the jury as the value of the stock involved, together with interest.

The judgment is affirmed.

BAYLESS, C. J., and CORN, GIBSON, and DANNER, JJ., concur. OSBORN and HURST, JJ., concur in conclusion. WELCH, V. C. J., and DAVISON, J., absent.